No. 28334

John Edward Hughes v. District Court in and for the City and County of Denver and the Honorable Henry E. Santo, Susan G. Barnes and Gilbert A. Alexander, District Court Judges

(593 P.2d 702)

Decided April 23, 1979.

Stuart A. Kritzer, for petitioner.

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, for respondents.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We issued a rule to show cause to review the contention raised by the petitioner, John Edward Hughes, in a petition for prohibition. He claims that the respondent district court erred in failing to grant his motions to

dismiss numerous felony charges against him, pursuant to the provisions of the Interstate Agreement on Detainers, sections 24-60-501, *et seq.,* C.R.S. 1973. We now make the rule absolute and remand to the district court with directions to dismiss the charges with prejudice.

In March of 1976, petitioner was charged with the crime of theft, section 18-4-401, C.R.S. 1973 (1978 Repl. Vol. 8). In September of 1976, he was charged with second-degree forgery, section 18-5-103, C.R.S. 1973 (1978 Repl. Vol. 8), theft, and two counts of conspiracy, section 18-2-201, C.R.S. 1973 (1978 Repl. Vol. 8). In November of that same year, petitioner was charged with another count of second-degree forgery. In July, 1977, while the petitioner was free on bond on the above charges, he was arrested in Denver and taken to the federal district court in Dallas, Texas, where he was charged with two counts of interstate transportation of stolen securities. 18 U.S.C. 2314.

The petitioner was convicted in Dallas of the federal charges. On September 16, 1977, he was sentenced to a term of seven years imprisonment. The order of commitment issued by the federal district court provided that:

"The defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of seven (7) years . . . ."

After sentence was imposed, the petitioner was confined in the Dallas County jail as a federal prisoner. On September 29, 1977, the Denver sheriff's department lodged a detainer against the petitioner with the Dallas County sheriff in accordance with the provisions of section 24-60-501, Art. IV(a), C.R.S. 1973. Subsequently, a writ of habeas corpus ad prosequendum was filed with the federal authorities in Dallas by the Denver district attorney's office, requesting that the petitioner be produced in the Denver district court on October 19, 1977, in order to set for trial several of the Colorado charges. Petitioner appeared, and the trial dates were set for January of 1978. On October 22, 1977, the petitioner was transported to the federal penitentiary in Leavenworth, Kansas.

In December of 1977, petitioner was released from Leavenworth on an appeal bond for his federal conviction. He did not appear for his January 1978 trials in the Denver district court. He was finally apprehended in May of 1978. The charges against the petitioner were consolidated for the purposes of a hearing on his motions to dismiss. The respondent court denied those motions.

■ The Interstate Agreement on Detainers has been adopted by legislation in forty-six states, by the Congress for the United States and the District of Columbia. It provides a mechanism for the expeditious disposal of detainers, based on untried charges, which are lodged against a prisoner. *See Moen v. Wilson,* 189 Colo. 85, 536 P.2d 1129 (1975). The purposes of the Agreement are spelled out in Article I:

"The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."

■ Under Article III of the Agreement, a prisoner can demand disposition of any indictment, information, or other charge which is the subject of a detainer lodged by a state which is a party to the Agreement. If trial on the charges underlying the detainer is not had within 180 days of the request, absent a continuance granted for good cause, they must be dismissed with prejudice. If, once the state which lodged the detainer obtains temporary custody of the prisoner, he is returned to the sending authority without trial, the charges which gave rise to the detainer must be dismissed with prejudice. *See* Art. III, sections (a) and (d).[1] *See also*

---

[1] "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

. . . .

"(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections, or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information, or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

*American Bar Association Standards Relating to Speedy Trial* (Second Edition) § 12-3.1 (1978). Thus, Article III provides a mechanism which can be invoked by a prisoner.

 Article IV both provides a procedure by which the "receiving state" may secure a prisoner in another state for trial and sets forth the receiving state's obligations once rendition is made. The receiving state must try the prisoner within 120 days after he arrives in the receiving state. Article IV(c).[2] Moreover, it may not return the prisoner to the sending state without first trying him on the charges which underlie the detainer. Article IV(e).[3]

Thus, Article IV(e) allows the receiving state only one rendition. *United States ex rel. Escola v. Groomes,* 520 F.2d 830, 837 (3rd Cir. 1975). Failure of the receiving state to comply with either Article IV(c) or Article IV(e) causes dismissal of the charges against the prisoner which provided the basis for the detainer. *United States ex rel. Escola v. Groomes, supra.*

"Because the detainer remains lodged against the prisoner until the underlying charges are finally resolved, the Agreement requires that the disposition be speedy and that it be obtained before the prisoner is returned to the sending State . . . .

"[W]e view article IV(c) as requiring commencement of trial within 120 days whenever the receiving State initiates the disposition of charges underlying a detainer it has previously lodged against a state prisoner. Any other reading of this section would allow the Government to gain the advantages of lodging a detainer against a prisoner without assuming the responsibilities that the Agreement intended to arise from such an action." *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

 It is apparent from the facts in this case that the petitioner was returned to the custody of the federal authorities[4] after the charges against him were set for trial, but before he was tried, in violation of Arti-

---

[2] "(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

[3] "(e) If trial is not had on any indictment, information, or complaint contemplated hereby *prior* to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." (Emphasis added.)

[4] The fact that petitioner was received from federal custody in the Dallas County jail and returned to federal custody at Leavenworth, Kansas, does not obviate the application of the Interstate Agreement on Detainers, because he was thus not "returned to the original place of confinement" as provided in Article IV(e). Of course, the requirements of the Agreement cannot be circumvented by hopscotching a prisoner from one place of confinement to another.

cle IV(e). The requirements of the Agreement are mandatory. *United States v. Mauro, supra,* 436 U.S. at 345 (n. 4).

The respondent court ruled that the State of Colorado was not bound by the requirements of Article IV(e), because:

"There is a distinction between place of confinement and imprisonment. And I am going to rule this defendant was never brought here from a place of imprisonment, but from a place of confinement. And, in fact, stopped enroute to a place of imprisonment. Why, or how he got here, I don't know."

■ The ruling of the respondent court was in error. The order of commitment issued by the federal district court in Dallas committed the petitioner to the custody of federal authorities on September 16, 1977. His seven-year sentence began running on that date. At that time, he was clearly imprisoned. The fact that the petitioner had not been transported to his eventual place of imprisonment at the time the detainer was lodged by the Denver sheriff's office is irrelevant. He was where the federal authorities wished to keep him. *See* note 4, *supra.* In this light, the distinction drawn by the respondent court was supported neither by the language of the Interstate Agreement on Detainers nor by case authority. *See United States v. Mauro, supra.*

■ On appeal, respondents have urged several arguments in support of the respondent court's ruling. First, they contend that the petitioner was at all times during his stay in Denver in the custody of federal marshalls and that the act of removing the petitioner from Colorado to Leavenworth should be charged against the federal authorities, and not against the State of Colorado. *See People v. Dye,* 69 Ill.2d 298, 371 N.E.2d 630 (1977). While we express no opinion as to the correctness of the result reached in *People v. Dye, supra,* that case does not support the respondents' contention. Nothing in the record indicates that the United States retained custody of the petitioner while he was in Colorado. It does not appear that he was accompanied during his Denver district court appearances by federal marshalls. The petitioner was in the "temporary custody" of the State of Colorado during his stay here, as envisioned by Article IV(a). *See People v. Dye, supra,* at 633.

■ Alternatively, respondents contend that the rehabilitative purposes of the Interstate Agreement on Detainers, as expressed in Article I, would have been subverted had the petitioner not been sent to Leavenworth pending trial. *See Neville v. Friedman,* 67 Ill.2d 488, 367 N.E.2d 1341 (1977). We do not agree. *Neville v. Friedman* turned on the fact that the lengthy continuance which occasioned the return of the prisoner

in that case to the sending state was granted at the prisoner's request.[5] The record in this case does not indicate that the petitioner made any such request.

█ Finally, respondents note that the petitioner suffered no apparent prejudice by virtue of his transportation to Leavenworth, since no detainer was filed against him by Colorado when he reached that place of imprisonment. There is no requirement in the Interstate Agreement on Detainers that a prisoner demonstrate that prejudice resulted from a violation of its provisions. It does not appear that such a requirement would further the purposes of the Agreement as spelled out in Article I, and we decline to adopt such a construction of the Agreement.

Accordingly, we remand to the district court with directions that the charges against petitioner which formed the basis for the detainer filed with the Dallas County sheriff's office be dismissed with prejudice.

MR. JUSTICE PRINGLE does not participate.

---

[5] We express no opinion as to the correctness of the analysis employed by the court in *Neville v. Friedman, supra.* It should be noted that *Neville v. Friedman* antedates *United States v. Mauro, supra,* which engaged in no such sophistry. *Compare, Commonwealth v. Merlo,* 242 Pa. Super. 517, 364 A.2d 391 (1976).