601 P.2d 641 (1979)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Jack Raymond LINCOLN, Defendant-Appellant.
No. 77-290.
Colorado Court of Appeals, Div. I.
June 14, 1979.
Rehearing Denied July 19, 1979.
Certiorari Denied October 29, 1979.
J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Lynne M. Ford, Asst. Atty. Gen., Denver, for plaintiff-appellee.
J. Gregory Walta, Colorado State Public Defender, Paula K. Miller, Deputy State Public Defender, Denver, for defendant-appellant.
KELLY, Judge.
The defendant was convicted in 1977 of escape, and contends on appeal that the trial court erred in denying his motion to dismiss for failure to comply with the Interstate Agreement on Detainers, § 24-60-501, *642 Art. III(c), C.R.S.1973, and Idaho Code § 19-5001(a). We agree with the defendant's argument that he was deprived of his rights under the Agreement, and therefore reverse.
On May 7, 1974, a criminal complaint, summons, and warrant were executed, charging the defendant with having escaped from the Colorado State Penitentiary on April 24, 1974. On June 10, 1974, receipt of a warrant against the defendant was acknowledged by letter from the Records Administrator of the Idaho State Penitentiary, directed to an investigator of the Colorado State Penitentiary. This letter also contained the information that the defendant had been received at the Idaho State Penitentiary on June 4, 1974, for a term "not to exceed fifteen (15) and five (5) years/concurrently" for convictions of burglary, and gave the defendant's tentative release date as June 22, 1984.
Prior to trial, the defendant moved to dismiss the prosecution on the grounds that he had been deprived of due process and of his right to a speedy trial because the Idaho officials had neither notified him of the lodging of the detainer, nor advised him of his right to request final disposition of the charges. An evidentiary hearing was held at which the letter above referred to was received in evidence. Its authenticity has not been challenged. The defendant also testified at this hearing in support of the allegations of his motion.
The trial court entered a written order denying the motion to dismiss, finding that the defendant's testimony that the Idaho officials had failed to comply with Article III(c) of the Agreement was unworthy of belief. The court also stated that Idaho records should have been introduced to substantiate the defendant's claims, and ruled, in effect, that the burden was on the defendant to do so.
The defendant's argument here is premised on the assumption that this Court may accept the testimony of the defendant which was rejected by the trial court. This we may not do. It is for the trier of fact to determine the credibility of witnesses, and we are bound on review by that determination. People v. Archuleta, 191 Colo. 482, 554 P.2d 307 (1976). Accordingly, the limited issue before us is whether the trial court properly placed the burden on the defendant to establish noncompliance with the Agreement by the officials of the sending state.
The People assert that we need not reach this issue, since the record shows that the provisions of the Agreement were not activated. The reasoning is that, because the criminal complaint, summons, and warrant charging escape were not filed in the county court until September 1976, it follows that the Colorado warrant received in Idaho in June 1974 must have been based on the offense for which the defendant was under confinement at the Colorado State Penitentiary at the time of his escape. Thus, the People argue, there were no "untried charges" within the contemplation of the Agreement sufficient to trigger its application.
We agree that it is not until the receiving state lodges with the sending state a detainer based on a pending indictment, information, or complaint that the provisions of the Agreement are activated. See State v. Wood, 241 N.W.2d 8 (Iowa 1976). However, this is a fact issue, and there is no direct evidence in the record to support the People's argument that the document sent to Idaho was based on the conviction for which the defendant was serving his sentence at the time of his escape, and the status of the warrant as a detainer under the Agreement on Detainers was neither raised at the hearing nor ruled on by the trial court. Under these circumstances, the issue has not been timely raised. People v. Paris, 182 Colo. 148, 511 P.2d 893 (1973).
The People also argue that the defendant failed to show that the Idaho officials did not notify him of his rights as required by Article III(c). The trial court's rejection of the defendant's testimony concerning these facts leaves us with a silent record. Relying on the presumption that public officials *643 discharge their duties in a valid and regular manner, see People v. Rivera, 37 Colo.App. 4, 542 P.2d 90 (1975), the People contend that the trial court properly placed the burden on the defendant to rebut this presumption.
We have found no cases, and none have been cited to us, addressing these precise questions. The Agreement itself, however, provides guidance. Its purpose, as stated in § 24-60-501, Article I, C.R.S. 1973, is "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." See Simakis v. District Court, Colo., 577 P.2d 3 (1978); Brown v. District Court, Colo., 571 P.2d 1091 (1977); Moen v. Wilson, 189 Colo. 85, 536 P.2d 1129 (1975). The Agreement also provides, in Article IX, that it is to be liberally construed so as to effectuate these purposes. It is with these objectives in view that the issues here present must be examined.
Article III(c) of the Agreement provides that:
"The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based."
The Agreement provides no sanction for the failure of an official of the sending state to comply with this requirement. Hence, the ultimate question is: As between the state and the prisoner, which shall suffer the penalty for official omissions under Article III(c)?
The cases from other jurisdictions relied on by the People are inapposite. See King v. State, 5 Md.App. 652, 249 A.2d 468 (1959) (interpreting Maryland intrastate detainer statute which differs significantly from Colorado statute); State v. Brackett, 14 Ohio Misc. 39, 233 N.E.2d 619 (1967) (insufficient proof of demand by defendants for disposition after learning of detainer); State v. Kwitek, 53 Wis.2d 563, 193 N.W.2d 682, cert. denied 409 U.S. 1047, 93 S.Ct. 536, 34 L.Ed.2d 499 (1972) (failure of defendants to prove they made demand for disposition after learning of detainer).
Nor do we regard Brown v. District Court, supra, relied on by the People, as dispositive. There, the court said that "the statute is generally designed to benefit the states, not the prisoners." In Brown, however, the court was addressing compliance with the Agreement only in the context of the trial court's acquisition of personal jurisdiction over the defendant. The court expressly rejected the concept that a prisoner is without protection under the Agreement. Brown does not stand for the proposition, urged by the People, that the states, being beneficiaries of the Agreement, are without obligation to assume responsibility for compliance with its requirements by the foreign jurisdiction.
In Hughes v. District Court, Colo., 593 P.2d 702 (1979), our Supreme Court, in considering Article IV provisions, stated that "[t]he requirements of the Agreement are mandatory," citing United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Although the Mauro court was also dealing with Article IV of the Agreement, the philosophy underlying its decision is clear:
"Once the Federal Government lodges a detainer against a prisoner with state prison officials, the Agreement by its express terms becomes applicable and the United States must comply with its provisions. And once a detainer has been lodged, the United States has precipitated the very problems with which the Agreement is concerned."
However difficult it may be for "prosecutors in the receiving state to compel official compliance with the statute in the sending jurisdiction," as the People argue here, the Agreement does not accord the prison official discretion to comply or not to comply with its terms. See Pittman v. State, 301 A.2d 509 (Del.1973).

*644 "[The] petitioner should not be charged with the responsibility of insuring that his captors have complied with provisions of the law when he has no control over their activities. By placing the burden of insuring compliance on the two states involved, the defendant is less likely to become `the victim of their contributory inaction.' People v. Esposito, 37 Misc.2d 386, 201 N.Y.S.2d 83, 90 (Queens County Ct. 1960)." Nelms v. State, 532 S.W.2d 923 (Tenn.1976).
See also People v. Wilson, 69 Cal.App.3d 631, 138 Cal.Rptr. 259 (Dist.Ct.App.1977).
The duty to inform the prisoner under Article III(c) is a necessary concomitant to the effective operation of the Agreement. People v. Daily, 46 Ill.App.3d 195, 4 Ill.Dec. 756, 360 N.E.2d 1131 (1977). The purpose of the Agreement requires that the adverse consequences of official oversights be visited upon the prosecution, not upon the prisoner. Only in this way can the goals of the Agreement be achieved by requiring the officials concerned to learn of their duties under the Agreement, and to perform them conscientiously. People v. Esposito, supra.
The receiving state, having set the provisions of the Agreement in motion, must bear the burden of assuring that its provisions are enforced in the sending state. If the serious consequence of dismissal results automatically from the failure of the correctional officials in the imprisoning state to comply, "pressure [will] soon be brought to bear on the negligent officials from their administrative superiors as a result of protests from the other state." Note, Convict's Right to a Speedy Trial, 18 Rutgers L.Rev. 828, at 862 (1964).
In none of the cases we have examined treating the provisions of the Interstate Agreement on Detainers has any court applied the presumption that officials of party states to the Agreement have performed their required duties thereunder in a valid and regular manner. While there are sound policy reasons for applying the presumption within the borders of each sovereign state, its application to the duties imposed by Article III(c) "would allow the Government to gain the advantages of lodging a detainer against a prisoner without assuming the responsibilities that the Agreement intended to arise from such an action." United States v. Mauro, supra.
We hold that the presumption that public officials perform the duties imposed on them by law in a valid and regular manner does not apply to officials of a sending state under the Agreement on Detainers. We further hold that where, as here, a defendant files a timely motion to dismiss, based on noncompliance by officials of the sending state with the provisions of Article III(c) of the Agreement, supported by documentation showing that a detainer from the receiving state was lodged against him, the burden rests upon the People to establish compliance with the Agreement's provisions by the sending state.
In view of these conclusions, it is unnecessary to consider the defendant's other arguments.
The judgment is reversed, and the cause is remanded with directions that the charges against the defendant be dismissed.
COYTE and PIERCE, JJ., concur.