The **PEOPLE** of the State of Colorado, Plaintiff-Appellant,

v.

**Alan Daniel SEVIGNY,** Defendant-Appellee.

**No. 83SA3.**

Supreme Court of Colorado, En Banc.

April 2, 1984.

Nolan L. Brown, Dist. Atty., Alan C. Shafner, Deputy Dist. Atty., Golden, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellee.

QUINN, Justice.

In this case the People appeal from a judgment of dismissal[1] entered on the basis of the speedy trial provisions of the Interstate Agreement on Detainers (Interstate Agreement), section 24–60–501, C.R.S.1973 (1982 Repl.Vol. 10). The district court dismissed the pending criminal charges against the defendant, Alan Daniel Sevigny, because he had not been brought to trial within 180 days after he made a formal request for final disposition of the charges as required by Article III(a) of the Interstate Agreement. We affirm the judgment.

1. Section 16–12–102, C.R.S.1973 (1978 Repl.Vol. 8), authorizes prosecutorial appeals of "any decision of the trial court in a criminal case upon any question of law."

2. Section 18–4–102, C.R.S.1973 (1978 Repl.Vol. 8).

3. Section 18–4–203, C.R.S.1973 (1978 Repl.Vol. 8).

4. Section 24–60–501(III)(c), C.R.S.1973 (1982 Repl.Vol. 10), states:

## I.

The defendant was charged in the Jefferson County District Court with the crimes of first degree arson[2] and second degree burglary.[3] The public defender was initially appointed to represent the defendant and a plea of not guilty was entered. The defendant later retained private counsel and, after waiving his speedy trial rights, the trial was scheduled for January 26, 1982.

On January 8, 1982, Jefferson County authorities were informed by a North Dakota detective that the defendant had been arrested in Jamestown, North Dakota, for the crimes of burglary and auto theft. The Jefferson County District Court, after being advised of the defendant's out of state incarceration, ordered an *alias capias* for his arrest and continued the case until April 5. Because the defendant was still incarcerated in North Dakota at that time, the case was again continued to July 26.

On April 27 the defendant commenced a two and one-half year sentence in the North Dakota state penitentiary following his conviction in that state. The Lakewood Department of Public Safety, after learning of his incarceration, lodged a detainer with the North Dakota state penitentiary on May 7 in connection with the alias warrant for the charges pending in the Jefferson County District Court. On May 10 the warden of the penitentiary, pursuant to Article III(c) of the Interstate Agreement on Detainers, notified the defendant in writing of the detainer and also advised him of his right to make a request for final disposition of the Jefferson County charges.[4] The defendant on the same day executed a written request for final disposition,[5] which was received by the Jefferson

"The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based."

5. Section 24–60–501(III)(d), C.R.S.1973 (1982 Repl.Vol. 10), states in pertinent part:

County District Attorney's office and the Jefferson County District Court on May 15.

When the defendant's case came before the district court on July 26, 1982, the defendant was still in the North Dakota state penitentiary. His privately retained attorney requested permission to withdraw from the case, and the court granted the request and continued the case to November 1.

Sometime during the fall of 1982 the defendant was transferred to Jefferson County authorities and was brought before the court on November 1. Because prior defense counsel had been permitted to withdraw, the court again appointed the public defender to represent the defendant. Neither the court, the deputy district attorney, nor the public defender was aware of the precise status of the case at that time. When asked by the court whether he was prepared to set the case for trial, the public defender replied:

"I am prepared to set the matter for trial, Judge. I just want to make absolutely clear on the record that by doing so I intend to in no way waive any speedy trial rights that Mr. Sevigny may or may not have. The Court is aware of the fact that before walking into the courtroom today I had no idea that I was going to be reappointed on Mr. Sevigny's case. I'm totally unfamiliar with anything that may have occurred.

"Regarding speedy trial, I think that perhaps he has served some time in another state and there may be a question of a speedy disposition of detainer.... And I specifically do not waive anything ... which we may already have or may have in the future on speedy trial rights. However, I will set the case for trial and

"Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections, or other official having custody of the

then simply tell the Court if I can fit the date into my calendar. I have no idea when the speedy trial runs and under what conditions it runs.

"THE COURT: Yes, give them a trial date."

The district attorney, mistakenly believing that a 90 day speedy trial period was applicable to this case, requested the earliest date within the speedy trial period, without, however, providing the court with any information that might assist it in determining either the appropriate speedy trial period or the expiration of the speedy trial term. The court clerk inquired of the judge whether the trial had to be set within 90 days. The judge stated on the record that he believed that 90 days had long passed since the defendant's request for disposition of the detainer. The court clerk then advised counsel that the available trial dates were November 30 through December 2, or December 14, 15 and 16. The People requested the November 30 trial date. The public defender, after advising the court of his intent to file a motion to dismiss on speedy trial grounds and his need for some time to review the past history of the case, requested the December 14 trial date. The court set the case for trial on December 14, 1982.

Prior to trial the public defender filed a motion to dismiss for violation of the 180 day speedy trial provision of the Interstate Agreement on Detainers. The motion was heard by the court on November 29. The public defender argued that dismissal was warranted because the limitation period had expired on November 14, although a correct computation of the speedy trial period shows that it actually expired on November 11.[6] The district attorney, conced-

prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner."

6. The following computation supports November 11 as the expiration date:

ing that the speedy trial period had already lapsed, contended nonetheless that docket congestion justified the delay in this case. The district court concluded that the delay was chargeable to the People, rather than to the court's docket, and dismissed the case. The People then appealed the judgment of dismissal to this court.

## II.

 The Interstate Agreement on Detainers has been adopted as the statutory law of this state. Section 24–60–501, C.R. S.1973 (1982 Repl.Vol. 10). Its purpose is to eliminate the uncertainties surrounding outstanding criminal charges in states other than the state of incarceration, thereby fostering more effective treatment and rehabilitation of the prisoner. *Simakis v. District Court,* 194 Colo. 436, 439, 577 P.2d 3, 5 (1978); *see also Hughes v. District Court,* 197 Colo. 396, 593 P.2d 702 (1979). Section III(a) of the Agreement provides as follows:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

A request for final disposition by the prisoner is deemed to be a waiver of extradition and a consent to the production of his person in any court where his presence is required. Section 24–60–501(III)(e), C.R.S. 1973 (1982 Repl.Vol. 10). Article V(c) of the Interstate Agreement provides that in the event the indictment, information, or complaint which gave rise to the detainer is not brought to trial within the prescribed period, then "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." Thus, once the speedy trial period has been triggered by a proper notice from the prisoner, the burden of compliance is on the district attorney and the trial court. A failure to comply, in the absence of a waiver or the existence of good cause for continuance, requires dismissal without regard to a showing of prejudice by the prisoner. *Hughes v. District Court, supra.*

## III.

The People, although conceding that the defendant was not brought to trial within the 180 day period mandated by Article III of the Interstate Agreement, raise three arguments in support of their claim that the district court erred in granting the defendant's motion to dismiss. We find each argument to be without merit.

| | | | |
|---|---|---|---|
| May 15 – May 31 | 16 days | September | 30 days |
| June | 30 days | October | 31 days |
| July | 31 days | November 1 – 11 | 11 days |
| August | 31 days | | 180 days |

## A.

■ The People first contend that defense counsel's failure to object to a trial date beyond the 180 day term, coupled with his request for a trial date later than that sought by the prosecution, constituted a waiver of the defendant's right to a speedy trial. Speedy trial rights under the Interstate Agreement on Detainers are statutory rather than constitutional in origin. *People v. Moody,* 676 P.2d 691 (Colo.1984). While a waiver of statutory speedy trial rights need not comport with the standards applicable to a waiver of basic constitutional rights—that is, an intentional relinquishment or abandonment of a right or privilege adequately understood by the defendant, *e.g., Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)—a waiver of statutory rights must still be voluntary. *People v. Moody, supra.* Voluntariness in this context requires a showing of record that the defendant or his attorney freely acquiesced in a trial date beyond the speedy trial period. *E.g., People v. Gallegos,* 192 Colo. 450, 560 P.2d 93 (1977); *Harrington v. District Court,* 192 Colo. 351, 559 P.2d 225 (1977). Although failure to object to a trial setting beyond the speedy trial term is one factor to consider on the issue of waiver, *Chambers v. District Court,* 180 Colo. 241, 504 P.2d 340 (1972), mere silence, by itself, does not prove a waiver. *People v. Gallegos, supra; Harrington v. District Court, supra.*

■ The record in this case, far from establishing defense counsel's voluntary acquiescence in a trial setting beyond the speedy trial term, shows an unequivocal disclaimer of any speedy trial waiver. Defense counsel affirmatively told the court on November 1, 1982, when the court set the case for trial on December 14, that he was unfamiliar with the case, was not waiving any of the defendant's speedy trial rights, and intended to file a motion to dismiss the case due to a speedy trial violation. Defense counsel's statement, in the context of this record, can hardly be construed as a voluntary acquiescence in a trial setting beyond the speedy trial term. Moreover, the earliest trial date offered to the defendant was November 30 which, unknown to both the court and counsel, was some nineteen days after the speedy trial period would already have expired. We find no plausible basis in fact or in law to infer a waiver under these circumstances.[7]

## B.

■ The People next contend that the trial date set by the court was, in effect, a continuance granted at defense counsel's request, notwithstanding the absence of any formal request for a continuance. This argument might have merit if, but for defense counsel's request for the December 14 date, the prosecution could have effectively brought the defendant to trial within the speedy trial period. Defense counsel's preference for the December 14

---

**7.** In asserting that the defense counsel's disclaimer was ineffective, the People place substantial reliance on *People v. Fetty,* 650 P.2d 541 (Colo.1982). In *Fetty* defense counsel, who had been offered earlier trial dates by the trial court, requested a date beyond the speedy trial period to accommodate his schedule. Although defense counsel stated that he was not waiving the defendant's speedy trial rights, he made no effort to seek an available trial date within the limitation period. We found those facts sufficient to constitute a waiver. Implicit in our holding in *Fetty* is that defense counsel's request for a delayed trial setting for his own "scheduling purposes" constituted a voluntary acquiescence in the setting beyond the speedy trial period and that, but for defense counsel's request, the defendant could and would have been

brought to trial within the speedy trial term. As noted above, although defense counsel in the instant case expressed a preference for the December 14 trial setting over the earlier date of November 30, the clear import of defense counsel's statement was that he was objecting to any trial date that did not comport with the defendant's speedy trial rights under the Interstate Agreement. We cannot fairly equate defense counsel's statement in this case with the voluntary acquiescence present in *Fetty.* Moreover, in contrast to *Fetty,* there is nothing of record indicating that, but for defense counsel's preference for the December 14 date, the case could and would have been set within the 180 day period. The People's reliance on *Fetty* is therefore misplaced.

date, however, had no effect on the prosecutor's ability to comply with the 180 day speedy trial period. Even if the court had set the matter for trial on November 30, the date requested by the prosecution, the defendant still would not have been tried within the period mandated by Article III(a) of the Interstate Agreement. In short, the case was set for trial beyond the speedy trial term not because of any continuance granted at defense counsel's request but because, so far as the record shows, the prosecution was unaware of the precise character of the defendant's speedy trial rights [8] and failed to comply with its obligations under the Interstate Agreement.

## C.

The People also argue that the trial setting of December 14 resulted from docket congestion and thus amounted to a constructive continuance for "good cause" within the intendment of Article III(a) of the Interstate Agreement. Article III(a) states that "for good cause shown in open court, the prisoner or his counsel being present, the court ... may grant any necessary or reasonable continuance." This language contemplates, in the absence of a waiver of the defendant's speedy trial rights, a prosecutorial motion for a continuance, made of record in the presence of the defendant or defense counsel and supported by facts amounting to "good cause." The record, however, clearly shows that the prosecution never sought a continuance in this case. Thus, what the People are really arguing is that we should imply a prosecutorial motion for a continuance simply from the fact of a trial setting beyond the speedy trial term. This argument cannot be reconciled with either the language or purpose of the Interstate Agreement.

Article V(c) requires dismissal of an information not brought to trial "within the period provided in article III." As we have previously noted, the design of Article III(a) is to permit the court to continue a trial beyond the 180 day period, notwithstanding the defendant's objection, only if the prosecution expressly requests a continuance, makes the request of record in the presence of the defendant or defense counsel, and supports the request by a showing of good cause. To imply a prosecutorial motion for a continuance solely on the basis of a trial setting beyond the speedy trial term, when no request for a continuance has ever been made, would be in clear contravention of the requirements of Article III(a). Moreover, such a result not only would render the 180 day speedy trial period illusory but also would foster the very uncertainty of disposition that the Interstate Agreement seeks to eliminate.

Finally, the record quite conclusively shows that it was prosecutorial inadvertence rather than trial court congestion that caused the trial to be set beyond the speedy trial term. Although the People were aware of the defendant's request for a speedy disposition as far back as May 15, 1982, no effort was made to bring him to trial until he appeared in court on November 1, ten days before the speedy trial expiration date of November 11, 1982. Given this prosecutorial inaction in bringing the defendant before the court, the unavailability of any trial dates within the remaining ten days of the speedy trial term was a circumstance common to most dockets in urban courts and does not constitute, in our view, the type of docket congestion that might arguably be encompassed within the "good cause" standard for a continuance set out in Article III(a) of the Interstate Agreement.[9] Were we to hold other-

8. Even with the delayed efforts of the prosecution in securing the defendant's presence before the court, if the prosecution at the November 1 trial setting had correctly informed the court of the speedy trial expiration date, the court might have been able to comply with Article III(a) of the Interstate Agreement by rearranging its trial docket or by transferring the case to another judge within the same district for trial within the ten day period remaining on the speedy trial term.

9. In *People v. Bell*, 669 P.2d 1381 (Colo.1983), we stated that chronic trial congestion does not constitute cause for dispensing with the statuto-

wise, the salutary purposes of the Inter-state Agreement could be thwarted by the very type of prosecutorial delay in securing the defendant's presence that Article III(a) seeks to prohibit.

The judgment of dismissal is affirmed.

ry speedy trial requirements of section 18–1–405, C.R.S.1973 (1978 Repl.Vol. 8), because "chronic trial congestion" is not listed among the exclusionary provisions of section 18–1–405(6). 669 P.2d at 1385. A statute that permits a continuance for "good cause," however, obviously contemplates an *ad hoc* balancing of many factors in passing on a request for contin-

uance. Docket congestion might arguably qualify as one of these factors. *See People v. Bell,* 669 P.2d at 1386 n. 3. In any event, because prosecutorial delay in securing the presence of the defendant was the reason for the belated trial setting in this case, we leave the resolution of this question for another day.