**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Gordon H. ALLEN, Defendant–Appellee.**

**No. 86SA150.**

Supreme Court of Colorado,
En Banc.

Oct. 13, 1987.

change was based on a twelve-month calcula-

David J. Thomas, Dist. Atty., E. Ronald Beeks, Donna Skinner Reed, Deputy Dist. Attys., Golden, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Judy Fried, Deputy State Public Defender, Denver, for defendant-appellee.

MULLARKEY, Justice.

This case involves the defendant's speedy trial rights under the Interstate Agreement on Detainers (IAD), section 24–60–501, 10 C.R.S. (1982). The district court dismissed four criminal charges against the defendant, Gordon H. Allen, because of the People's failure to bring the defendant to trial within 120 days of his arrival in Colorado as required by IAD Article IV(c). The People filed a motion for reconsideration, which was denied. The People now ap-

tion.

peal[1] from the order denying reconsideration. We affirm.

## I.

A brief explanation of the IAD speedy trial requirements is necessary to put this case in context. After a detainer is filed, the IAD permits both the prisoner and the prosecuting authority which filed the detainer to initiate proceedings to bring the prisoner to trial. Different speedy trial periods apply to the two types of proceedings. If the prosecuting authority initiates the proceedings, trial must be held within 120 days after the prisoner arrives in the jurisdiction seeking to try him. IAD, Art. IV(c). If the prisoner requests final disposition of the charges, he must be tried within 180 days after the prosecution and the appropriate court are notified of his request. IAD, Art. III(a). In either instance, the court may grant a reasonable or necessary continuance for good cause shown. IAD, Arts. III(a) and IV(c).

In the present case, on January 5, 1985, the Jefferson County district attorney lodged a detainer against the defendant, who was incarcerated in a federal penitentiary in Wisconsin. Two days later, the defendant was notified that a detainer had been lodged against him. On May 10, 1985, the district attorney initiated proceedings to have the defendant returned to Colorado by sending the warden of the federal penitentiary a request for temporary custody of the defendant pursuant to IAD Article IV(a).

On June 18, 1985, after having been notified of the district attorney's request for temporary custody, the defendant requested final disposition of the charges underlying the detainer pursuant to IAD Article III(a). On the same day, the federal authorities notified the district attorney and the court of the defendant's request and informed the district attorney that his request for temporary custody had been approved. The federal authorities offered to deliver temporary custody of the defendant to an appropriate authority in Colorado and the defendant arrived in Colorado on July 12, 1985. He appeared in county court on July 15, 1985, and an attorney was appointed to represent him. On August 26, 1985, the defendant, his attorney, and the district attorney appeared in district court for arraignment. The judge suggested a trial date of January 28, 1986. Both attorneys said that January 28 would be "fine." No mention was made of the detainer, the defendant's request for disposition of charges, the district attorney's request for temporary custody, or the time requirements under the IAD. January 28 was well beyond both the 180–day time limit of Article III and the 120–day time limit of Article IV.

On September 9, 1985, the district judge informed the district attorney that there was a detainer problem. The district attorney discussed the matter with defense counsel, but neither attorney made any effort to reset the trial. On November 4, 1985, the district judge set the case for hearing on her own motion. The judge's expressed purpose was to set a trial date within the speedy trial limit of the IAD. She set the trial for November 26, 1985, and, in response to a question from the defendant's attorney, stated that all motions should be filed by November 12. The defendant's attorney[2] and the prosecutor both agreed to this schedule, which was within the 180–day period of Article III but beyond the 120–day period of Article IV.

On November 12, 1985, 120 days after his arrival in Colorado, and the last day on which he was allowed to file motions, the defendant filed, *inter alia*, a motion to dismiss based on the prosecution's failure to bring him to trial within the 120–day

---

1. Section 16–12–102(1), 8A C.R.S. (1986), authorizes the prosecution to appeal "any decision of the trial court in a criminal case upon any question of law." C.A.R. 4(b)(2) provides that all such appeals shall be filed in the Supreme Court.

2. Even though the defendant was not present at this hearing, defense counsel could have waived the defendant's statutory rights. *Cf. People v. Sevigny*, 679 P.2d 1070, 1075 (Colo.1984) (waiver requires showing that "the defendant *or his attorney* freely acquiesced in a trial date beyond the speedy trial period") (emphasis added).

period of IAD Article IV. After a hearing, the judge found that the time limits of Article IV applied to this action. She rejected the People's primary argument, that defense counsel's question about the motions date at the November 4, 1985, hearing had been a request for a continuance. Concluding that the prosecution had failed to meet its burden of assuring compliance with the IAD, she orally dismissed the charges against the defendant. A written order dismissing the charges was entered on November 25.

On December 6, 1985, the People moved for reconsideration, arguing that the defendant had known that the judge was setting the trial beyond the speedy trial period of IAD Article IV and had not said anything. The People contended that this amounted to "gamesmanship," waiver, and "trial by ambush." On March 7, 1986, the district court held a hearing on the People's motion for reconsideration. The judge found that at the November 4, 1985, hearing, the defendant's attorney had not known about the district attorney's Article IV request for temporary custody. Accordingly, the judge concluded that the defendant's attorney had not deceived the trial court, and she denied the motion for reconsideration. The People appeal from the denial of the motion for reconsideration.[3]

## II.

As a threshold issue, the trial court considered whether the speedy trial limit of Article III or Article IV controlled this case. The district attorney conceded that

this was an Article IV case and the trial court agreed, relying on *United States v. Mauro*, 436 U.S. 340, 356 n. 24, 98 S.Ct. 1834, 1845 n. 24, 56 L.Ed.2d 329 (1978). The district attorney did not appeal this issue and it is not before us. We are asked to decide only whether the defendant waived his procedural right to be tried within 120 days of his arrival in Colorado.

## III.

The protections of the IAD are designed to "facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner in another jurisdiction." *United States v. Black*,[4] 609 F.2d 1330, 1334 (9th Cir.1979), *cert. denied*, 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980); *see also Mauro*, 436 U.S. at 359, 98 S.Ct. at 1846 (IAD enacted to prevent disruption to rehabilitation). Since the rights created by the IAD are statutory, rather than constitutional, waiver of those rights "must be voluntary, but need not be knowing and intelligent." *People v. Moody*, 676 P.2d 691, 695 (Colo.1984); *see also People v. Sevigny*, 679 P.2d 1070, 1075 (Colo.1984); *United States v. Odom*, 674 F.2d 228, 230 (4th Cir.), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982); *Black*, 609 F.2d at 1334.

Even under the less stringent "voluntariness" standard applicable to statutory rights, it is clear that mere silence by the defendant and his attorney when the trial date is set does not amount to waiver. *See Sevigny*, 679 P.2d at 1075; *cf. Harrington v. District Court*, 192 Colo. 351,

---

**3.** The district court and the parties focused on the question of when defense counsel learned of the prosecution's Article IV request. The district court found as a matter of fact that defense counsel did not know that Article IV applied to the case at the November 4, 1985, hearing. On appeal, the People urge us to reverse this finding. We decline to do so for several reasons. First, because this is an appeal by the prosecution in a criminal case, our jurisdiction is limited to questions of law. *See* § 16–12–102(1), 8A C.R.S. (1986). Second, since, as explained in part III, waiver of a statutory right need not be knowing and intelligent, defense counsel's knowledge is not relevant to the waiver issue presented by this appeal. The defendant could

have waived his right to be tried within the speedy trial period of Article IV even if neither he nor his attorney had known that Article IV applied. Finally, the record indicates that the defendant himself learned of the prosecution's Article IV request over two months before his arraignment.

**4.** Since the IAD "is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law," *Cuyler v. Adams*, 449 U.S. 433, 442, 101 S.Ct. 703, 709, 66 L.Ed.2d 641 (1981), it is especially appropriate to consider federal cases in order to resolve the waiver issue.

354, 559 P.2d 225, 228 (1977) (waiver of right to speedy trial under Title 18). Instead, "a defendant must either expressly waive his statutory right to a speedy trial or else affirmative conduct evidencing such a waiver must be shown." *People v. Abeyta*, 195 Colo. 338, 340, 578 P.2d 645, 646 (1978) (waiver of speedy trial rights under Crim.P. 48(b)).

For example, a defendant can waive his IAD rights by failing to assert them prior to or during trial. *See Moody*, 676 P.2d at 695; *United States v. Eaddy*, 595 F.2d 341, 346 (6th Cir.1979). An affirmative request by defense counsel for a trial date beyond the speedy trial period can be sufficient to waive the defendant's statutory rights. *See People v. Mascarenas*, 666 P.2d 101, 106 (Colo.1983) (defendant had actively participated in delay and had requested four continuances); *People v. Fetty*, 650 P.2d 541 (Colo.1982). Other affirmative requests for treatment inconsistent with the IAD can also result in waiver. *Compare Gray v. Benson*, 608 F.2d 825, 827 (10th Cir.1979) (by requesting a transfer after entering his plea, defendant waived anti-shuttling provision) *with Eaddy*, 595 F.2d at 344–45 (failure to state preference as to where defendant should be held pending trial did not waive anti-shuttling provisions).

The district attorney contends that in the case now before us the defendant waived his IAD speedy trial rights by participating in two trial settings which resulted in trial dates beyond the 120–day limitation.[5] We recently reiterated that a defendant may waive his speedy trial rights under the Uniform Mandatory Disposition of Detainers Act (Uniform Act)[6] "by freely acquiescing in a trial date beyond the ninety-day speedy trial period imposed by section 16–14–104[, 8A C.R.S. (1986) ]." *Martin v. People*, 738 P.2d 789, 792 (Colo.1987) (footnote omitted). We explained that "[t]his waiver concept, however, is based on the fact that a defendant's participation in selecting a trial date would contribute directly to any violation of the ninety-day provision. In that circumstance, the defendant has an opportunity to cure the statutory defect by promptly raising the issue." *Id.*

■ Here, we cannot say that the defendant's acquiescence in the two trial dates directly contributed to the speedy trial violation. Instead, as in *Sevigny*, the trial was set beyond the time allowed by statute because the "prosecution was unaware of the precise character of the defendant's speedy trial rights and failed to comply with its obligations under the Interstate Agreement." 679 P.2d at 1076 (footnote omitted).[7] The defendant did not have

---

**5.** In support of his contention, the district attorney points to section 18–1–405(5.1), 8B C.R.S. (1986) which states:

> If a trial date is offered by the court to a defendant who is represented by counsel and neither the defendant nor his counsel expressly objects to the offered date as being beyond the time within which such trial shall be had pursuant to this section, then the period within which the trial shall be had is extended until such trial date and may be extended further pursuant to any other applicable provisions of this section.

This argument was not presented to the trial court and is not properly before us. *People v. Greenwald*, 704 P.2d 312, 316 n. 8 (Colo.1985). Moreover, section 18–1–405(5.1) does not apply to this case. This provision was enacted by the General Assembly as part of S.B. 159, "Concerning Criminal Acts, and Relating to the Nature Thereof, Proceedings in Connection Therewith, and Prosecution and Punishment Therefor," Ch. 136, 1985 Colo. Sess. Laws 621–24. Section 12 of S.B. 159 provides that "[t]his act shall take effect July 1, 1985, and shall apply to acts com-

mitted on or after said date." *Id.* at 624. From the title of the bill, it is apparent that "acts committed" refers to criminal acts. The criminal acts with which this defendant was charged were committed on January 31, 1984, well before the July 1, 1985, effective date of S.B. 159. Hence, § 18–1–405(5.1) does not apply to this case.

**6.** The Uniform Act and the IAD "embody like policies, and, generally, the principles of one may be applied to the other." *People v. Campbell*, 742 P.2d 302 (Colo.1987); *see also People v. Higinbotham*, 712 P.2d 993, 997 n. 2 (Colo.1986).

**7.** The assistant district attorney who made the request for temporary custody of the defendant was not the attorney who actually prosecuted this case. The trial judge found that the deputy district attorney who prosecuted the case did not have personal knowledge that Article IV applied. This does not change our conclusion that he and his office had the burden of assuring compliance with the IAD.

to demand that the prosecutor and the court comply with the IAD, as long as he did not affirmatively request that they follow a procedure inconsistent with it. *See Eaddy*, 595 F.2d at 345; *cf. Odom*, 674 F.2d at 230 (defendant waived 120–day limit by seeking continuance). The burden of satisfying the speedy trial requirements of the IAD was on the prosecutor and the trial court. *See generally* S.Rep. No. 1356, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S. Code Cong. & Admin.News 4864, 4865–66 (when prosecutor initiates IAD proceedings, "[t]rial must be commenced within 120 days of the time the prisoner arrives ... unless the time is extended for good cause").

While our prior cases have not explicitly addressed the prosecutor's burden in an Article IV proceeding, we have repeatedly explained that the burden of assuring compliance with statutory time limits is on the district attorney and the trial court. For example, we have explained that in an Article III proceeding, "once the speedy trial period has been triggered by a proper notice from the prisoner, the burden of compliance is on the district attorney and the trial court." *Sevigny*, 679 P.2d at 1074; *accord, Gibson v. Klevenhagen*, 777 F.2d 1056, 1058 & n. 5 (5th Cir.1985) (receiving state has duty to see that prisoner is brought to trial within prescribed period); *cf. People v. Swazo*, 199 Colo. 486, 490, 610 P.2d 1072, 1074 (1980) ("burden for compliance with the time requirements [of the Uniform Act] is on the prosecution"); *People v. Lopez*, 41 Colo.App. 206, 209, 587 P.2d 792, 795 (1978) ("the burden of compliance with statutory time requirements is on the prosecution and the trial court"). Similarly, we have adopted the rule, first set forth by the court of appeals, that the receiving state must bear the burden of

assuring that the sending state notifies the prisoner that a detainer has been lodged. *Romans v. District Court*, 633 P.2d 477 (Colo.1981). Quoting from *People v. Lincoln*, 42 Colo.App. 512, 516, 601 P.2d 641, 644 (1979), we said in *Romans:*

> The purpose of the Agreement requires that the adverse consequences of official oversights be visited upon the prosecution, not upon the prisoner. ...
>
> The receiving state, having set the provisions of the Agreement in motion, must bear the burden of assuring that its provisions are enforced in the sending state.

633 P.2d at 481 (citations omitted).[8]

■ In the cases cited above, we held that the language and purposes of the statute required the burden of compliance to be placed on the prosecutor, even though he had no actual control over the critical events. For example, it is the action of the defendant, not the prosecution, which sets in motion the 180–day speedy trial period in an Article III proceeding. Similarly, the official of the sending state who has custody of the prisoner, not the receiving state's prosecutor, has control over whether the defendant receives the prompt notice required by Article III(c). By contrast, in an Article IV proceeding such as the one now before us, the prosecutor has control over when the time begins running because his request for temporary custody triggers the speedy trial period. Therefore, we hold that his burden of compliance includes the duty to keep track of the proceeding, to make the court aware of the time limits and other requirements of the IAD, and to assure that the trial date is timely. Due to the unfortunate combination of circumstances which occurred in this case, neither the judge nor defense counsel was aware of the district attorney's request for tempo-

---

**8.** In *Romans,* we held that violation of the prompt notification requirement required dismissal of the charges regardless of whether the prisoner had been prejudiced. In *People v. Higinbotham,* 712 P.2d 993, 995–1001 (Colo.1986), we decided that when the Uniform Act was silent as to the remedy for a violation, dismissal was required unless the prosecution could show that the defendant had not been prejudiced by the violation. We noted that our decision might

"fatally undermine our holding concerning the IAD in *Romans.*" 712 P.2d at 1000. However, we made it clear that when dismissal was required by the statute as it is in this case, *see* IAD, Art. V(c), no showing of prejudice would be required. Our decision in *Higinbotham* also made clear that the burden remained on the prosecutor to comply with the procedural requirements of the act.

rary custody.[9] While this fact is not dispositive, it illustrates a practical reason for requiring the prosecutor to follow up on IAD requests.

In this case, rather than the district attorney informing the court of the detainer problem, the trial court discovered the problem on its own, and informed the district attorney. When the district attorney did nothing to change the trial date, the trial court, on its own motion, called a hearing for the purpose of setting a new trial date to avoid speedy trial problems under the IAD. It was evident to all participants that the trial judge, after reviewing the court's file, thought this was an Article III case, subject to the 180–day time period.[10] The trial court made every effort to meet its obligations under the IAD. The district attorney had a duty to inform the court that he had initiated Article IV proceedings in this case and that Article IV triggered the shorter 120–day limitation. He should not have stood by silently while the judge set a trial date outside that time period.

In conclusion, the district attorney's inaction, particularly in light of the trial court's repeatedly bringing this issue to his attention, did not satisfy his burden of assuring compliance with the IAD. The defendant's conduct agreeing to two trial dates beyond the 120–day time period was not sufficient to support a finding of waiver. Under these facts, we find that the People failed to comply with the IAD. The requirements of the IAD are mandatory. *See Hughes v. District Court,* 197 Colo. 396, 401, 593 P.2d 702, 705 (1979). Dismissal with prejudice of the charges against the defendant is required under IAD Article V(c).

## IV.

For the reasons given above, we conclude that the defendant's right to a speedy trial under the IAD was violated and that dismissal of the charges against him was required. Therefore, we affirm.

VOLLACK, J., dissents, and ROVIRA, J., joins in the dissent.

VOLLACK, Justice, dissenting:

The majority holds that the defendant's silence, when his trial date was set beyond the speedy trial period, did not constitute a waiver of his statutory right under the Interstate Agreement on Detainers (IAD), section 24–60–501, 10 C.R.S. (1982). I disagree with this analysis in light of recent case law concerning statutory waiver. Therefore, I respectfully dissent.

## A.

The consideration of whether a defendant has waived his statutory IAD rights begins with this principle: a prisoner

9. At the November 20, 1985, hearing, the judge stated that she had not seen Exhibit 2, the district attorney's request for temporary custody, before that hearing. We have reviewed the record and we agree that the district attorney's request was not part of the record before that hearing. This problem is unlikely to recur, since Article IV(a) requires the court having jurisdiction of the indictment, information, or complaint to approve, record, and transmit the prosecution's request. Here, however, the detainer documents originally were misfiled, so the judge had not seen them. In an affidavit filed March 7, 1986, defense counsel stated that on November 4, 1985, based on his review of the court file, he believed that "the Article III, 180 day period applied." This also appears to be due to unusual circumstances. There was confusion as to whether the district attorney was supposed to send all discovery information to defense counsel, or whether defense counsel was supposed to pick it up at the district attorney's office. At the November 20 hearing, the district attorney admitted that he had not complied with the discovery rule requiring him to send the information to defense counsel. Therefore, defense counsel did not obtain a copy of the Article IV request through discovery. Further, the defendant was incarcerated in another county and defense counsel had difficulty contacting him. Therefore, even though the defendant had been promptly notified of the prosecution's request, the record indicates that he did not inform his attorney about it.

10. Immediately after expressing concern about the speedy trial problem, the judge suggested a date beyond the 120–day period but within the 180–day period. At the March 7, 1986, hearing, the judge explained that she "thumbed through the file and saw Inmate's Notice of Place of Imprisonment and Request for Disposition which is the activating document for the ... 180–day rule and did not search any further."

waives his Article IV rights by acting in a manner inconsistent with the provisions of the IAD. *See e.g., United States v. Odom,* 674 F.2d 228 (4th Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982). My disagreement with the majority arises over what inconsistent action constitutes an implied waiver of the IAD rights.

The majority states that "a defendant must either expressly waive his statutory right to a speedy trial or else affirmative conduct evidencing such a waiver must be shown." At 76, quoting *People v. Abeyta,* 195 Colo. 338, 340, 578 P.2d 645, 646 (1978).[1] The majority then states that a defendant may waive his speedy trial rights "by freely acquiescing in a trial date beyond the ... speedy trial period." At 76, quoting *Martin v. People,* 738 P.2d 789, 792 (Colo.1987). Presumably, the majority equates "freely acquiescing in a trial date" with the "affirmative conduct" that the majority asserts is necessary to show waiver. However, although the majority acknowledges that the defendant in this case acquiesced in two trial dates, it deems this acquiescence insufficient to find waiver. At 76. I disagree.

In my opinion, the "freely acquiescing" language of *Martin* contemplates the defendant's silence during the setting of a trial date as a waiver. It is sufficient that a defendant agree with the trial date without objection. The definition of acquiesce, "to accept or comply tacitly or passively," *Webster's Third International Dictionary* 18 (1969), supports this view. I believe that the actions of the defendant in this case clearly show acceptance of the trial dates offered by the trial court, and I would find a waiver of the defendant's IAD rights.

### B.

In *Martin v. People,* we interpreted the Uniform Mandatory Disposition of Detainers Act (Uniform Act), section 16–14–101 to –108, 8A C.R.S. (1986), and held that a defendant should not automatically be deprived of the protection afforded by the notification requirement of section 16–14–103 "merely because he silently relies on the statute's provisions." 738 P.2d at 792. We recognized that a defendant is not a participant in the notification procedures under section 16–14–103, which requires that the superintendent of an institution where the prisoner is confined notify the prisoner of the untried formal charges against him.[2] If a violation of section 16–14–103 occurs, it does so independently of any action or inaction on the part of the defendant. In addition, at the notification stage it is more than likely that the defendant is not represented by counsel.

The situation is quite different for setting a trial date, as required under section 16–14–104 and Article IV(c) of the IAD. During the setting of a trial date, the defendant and his attorney are before the court as participants in the process. It makes sense to find that silent acquiescence in the trial date constitutes an implied waiver. The majority notes, "[s]ince the rights created by the IAD are statu-

---

**1.** It should be noted that the cases relied on by the majority would likely not apply to cases arising from criminal acts committed after July 1, 1985. *See* at 76, n. 5. As we stated in *People v. Martin,* 732 P.2d 1210, 1213 n. 4 (Colo.1987), section 18–1–405(5.1) "reverses prior case law which held that a defendant's silence and failure to object to the setting of a trial date beyond the speedy trial term did not constitute a waiver." In my opinion, subsection 5.1 elucidates a principle which rejects the notion that a defendant can agree to a trial date without objection only to later claim that his rights were violated.

**2.** Section 16–14–103 states:

**Duties of superintendent upon delivery of request.** (1) Any request made pursuant to

section 16–14–102 shall be delivered to the superintendent where the prisoner is confined who shall forthwith:

(a) Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner, and any decisions of the state board of parole relating to the prisoner; and

(b) Send, by registered mail, a copy of the request made by the prisoner and a copy of the information certified under paragraph (a) of this subsection (1) to both the court having jurisdiction of the untried offense and to the prosecuting official charged with the duty of prosecuting the offense.

tory, rather than constitutional, waiver of those rights 'must be voluntary, but need not be knowing and intelligent.' " At 75, quoting *People v. Moody*, 676 P.2d 691, 695 (Colo.1984). Thus, a defendant can waive his IAD rights without being aware they exist, and can agree to a trial date without knowing what speedy trial period is applicable.

In the instant case, both parties stated that the first trial date was "fine." The defense counsel admits that he knew that this date was beyond the speedy trial period. At a hearing on the People's motion for reconsideration, the public defender in this case testified as follows regarding his knowledge of the time limit for setting a trial date in this case:

Q. [prosecutor] Now, you have stated in your affidavit that this was your first attempt—that you were under the impression this was a 180–day case, Article 3 [Article III of the IAD], yet you knew trial had been set 224 days beyond June 18, the relevant date for an Article 3 proceeding. You never suggested moving that date up?

A. [defense counsel] I discovered the detainer problem after Mr. Avery [the assistant district attorney] did. The Court informed Mr. Avery. Mr. Avery then informed me.

Q. [prosecutor] Yet at that time you stated here you thought this was a 180–day case?

A. [defense counsel] That's correct.

Q. [prosecutor] And yet you knew that the trial had been set well beyond 180 days, did you not?

A. [defense counsel] Yes.

A defendant should not have the right to participate in the setting of a trial date beyond the speedy trial period and then claim a violation of the speedy trial provision. *Accord Scrivner v. State*, 441 N.E.2d 954 (Ind.1982); *State v. Suarez*, 681 S.W.2d 584 (Tenn.Crim.App.1984). Under our holding in *Martin v. People*, the acquiescence in a trial date beyond the time period required for speedy trial would constitute a waiver. It matters not that at the time of this acquiescence defense counsel

did not know if Article III's 180–day limit or Article IV's 120–day limit applied. The defendant, through counsel, agreed to the second trial date. According to the trial court, the defendant acquiesced to this date without the knowledge that Article IV applied to the case. However, knowledge is not an element of the statutory waiver. In my view, it is sufficient that the defendant freely acquiesced in a trial date beyond the 120–day period.

Accordingly, I would reverse the order dismissing the charges against the defendant and remand the case with directions to set the case for trial.

I am authorized to state that Justice ROVIRA joins in this dissent.