633 P.2d 477 (1981)
Charles Leslie ROMANS, Jr., Petitioner,
v.
The DISTRICT COURT In and For the EIGHTH JUDICIAL DISTRICT of the State of Colorado, and the Honorable John-David Sullivan, one of the Judges Thereof, Respondents.
No. 81SA137.
Supreme Court of Colorado, En Banc.
September 14, 1981.
*478 J. Gregory Walta, Colorado State Public Defender, Denver, Thomas J. Herd, Deputy State Public Defender, Fort Collins, for petitioner.
Stuart A. VanMeveren, Dist. Atty., Terence A. Gilmore, Chief Deputy Dist. Atty., Fort Collins, for respondents.
LEE, Justice.
We issued a rule to show cause under C.A.R. 21 why the relief requested by the petitioner, Charles Leslie Romans, Jr. (defendant), in the nature of prohibition and mandamus should not be granted. We now make the rule absolute.

I.
The controversy in this case surrounds the interpretation of the Interstate Agreement on Detainers (the Agreement), which has been adopted by the vast majority of states and the United States Government. Section 24-60-501, et seq., C.R.S.1973.[1] It provides a framework for the timely disposition of criminal charges filed by one state against a prisoner held for a "term of imprisonment" in another state.
The purposes of the Agreement are to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints" through cooperation between the states, in order to best proceed with prisoner rehabilitation and treatment policies. Article I.
A state with untried criminal charges pending against an accused may file a detainer with another state holding the accused, requesting to be informed before the prisoner is released from custody. The Agreement provides that the state official with custody of the prisoner must then promptly notify the prisoner of the receipt of a detainer and "his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based." Article III(c). If the prisoner requests a final disposition of the charges, he must be brought to trial in the other jurisdiction within one hundred eighty days of the prosecuting officer's receipt of his written request. Article III(a).
The defendant claims that Article III(a) and Article III(c) of the Agreement were violated by federal prison authorities and that therefore he is entitled to dismissal with prejudice of all charges in Larimer County, Colorado.

*479 II.
The defendant bases his claims on the following facts. On May 16, 1978, the defendant was charged in Larimer County with four counts of felony theft in case number CR-78-181. On May 17, 1978, the defendant was again charged in Larimer County with felony theft in case number CR-78-180. He was not apprehended. While he remained at large he was arrested in California and convicted of a federal offense in March of 1980 and was placed on probation. On March 7, 1980, he was arrested in Minnesota for violating the terms of his sentence of probation which had resulted from the previous federal conviction. On April 14, 1980, the defendant appeared in federal court and his probation was revoked. Pursuant to 18 U.S.C. § 4205(c) and (d), the defendant was temporarily sentenced to a term which was "deemed to be for the maximum sentence of imprisonment prescribed by law" for his offense and remanded to the custody of the Attorney General for a ninety (90) day evaluation before final sentencing.
On May 29, 1980, a detainer was filed against the defendant based upon 1978 Larimer County, Colorado burglary charges. On June 2, 1980, the defendant sent a request to prison officials stating that he had heard rumors that a detainer from Colorado had been filed against him and that he was by his letter requesting a speedy disposition of any detainer pending.
On August 29, 1980, the defendant was returned to the federal court for final sentencing and was sentenced to a period of incarceration to be followed by an additional period of probation. Sometime during the next two months he was transferred to the Federal Correctional Institute in Englewood, Colorado. On October 24, 1980, defendant received his first actual notice of the detainer filed by Larimer County. However, at no point did prison officials inform him of his rights under the Agreement.
The defendant was delivered to the custody of the State of Colorado and a preliminary hearing on the burglary charges was held in Larimer County on January 5, 1981. Trial was set for February 17, 1981. On February 9, 1981, the defendant moved to dismiss the charges against him because of the failure of federal prison officials to promptly inform him of the detainer against him and of his right to demand speedy disposition of the charges. The defendant claimed that these actions violated the Agreement and moved that all charges in Larimer County be dismissed. On March 2, 1981, the District Court of Larimer County denied the defendant's motion to dismiss.
The defendant brought this original proceeding seeking a review of the trial court's denial of his motion to dismiss. We issued a rule to show cause why the relief the defendant requested in the nature of mandamus and prohibition should not be granted and now make that rule absolute.

III.
The defendant argues that he "entered upon a term of imprisonment" on April 14, 1980, that a detainer was filed against him on May 29, 1980, and that on June 2, 1980, he requested a speedy disposition of any charges resulting from that detainer. He claims that under Article III(a), the receiving state had one hundred eighty (180) days after receipt of his request for speedy disposition to try him. Since the trial was not scheduled until February 17, 1981, the defendant claims that duty under the Agreement was not performed and that therefore the charges against him in Larimer County must be dismissed. United States v. Hutchins, 489 F.Supp. 710 (N.D.Ind.1980) and see United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) and Hughes v. District Court, 197 Colo. 396, 593 P.2d 702 (1979).
[1] We do not agree that the defendant was "entered upon a term of imprisonment" on April 14, 1980. The defendant was committed to the custody of the Attorney General under the provisions of 18 U.S.C. § 4205(c). That section provides:
"(c) If the court desires more detailed information as a basis for determining *480 the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study described in subsection (d) of this section. The results of such study, together with any recommendations which the Director of the Bureau of Prisons believes would be helpful in determining the disposition of the case, shall be furnished to the court within three (3) months unless the court grants time, not to exceed an additional three (3) months, for study. After receiving such reports and recommendations, the court may in its discretion: (1) place the offender on probation as authorized by section 3651; or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of sentence shall run from the date of original commitment under this section." 18 U.S.C. § 4205 (1981 Supp.) (Emphasis added.)
The federal courts have held that the original ninety (90) day incarceration of a prisoner under 18 U.S.C. § 4205(c), is temporary and not final. United States v. Behrens, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963), and, see Corey v. United States, 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963). Given the purposes of the Agreement, the defendant may not be said to have entered upon a term of imprisonment until he was finally sentenced on August 29, 1980. See generally, United States v. Dobson, 585 F.2d 55 (3d Cir. 1978).
Under 18 U.S.C. § 4205(c), the defendant is committed to the custody of the Attorney General for the purposes of observation and study. The final sentence, if any, which the defendant will receive, will be intimately affected by the results of this ninety (90) day study.[2] It is not likely that during the ninety (90) day study period the prisoner would embark on any program of treatment or rehabilitation.
The defendant asserts, however, that since 18 U.S.C. § 4205(c) provides that his final sentence shall run from the date of original commitment, he has "entered onto a term of imprisonment" for the purposes of the Agreement at the beginning of his ninety (90) day study period. We do not agree. The purpose of that provision is similar to provisions giving a defendant credit for pre-sentence confinement in determining the final sentence. In our view, pre-sentence confinement is not a "term of imprisonment." United States v. Hutchins, supra, and see, United States v. Reed, 620 F.2d 709 (9th Cir. 1980) and United States v. Harris, 566 F.2d 610 (8th Cir. 1977).
Thus, since the defendant had not entered upon a term of imprisonment until his final sentence was pronounced on August 29, 1980, he was brought to trial, within the meaning of the Agreement, within one hundred eighty (180) days after his term of imprisonment and request for speedy disposition came into effect.[3]

IV.
Our inquiry, however, is not ended by a finding that the defendant's term of imprisonment did not begin until August 29, 1980. Article III(c) of the Agreement provides:

*481 "(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and content of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based." (Emphasis added.)
The defendant did not receive actual notice of the detainer issued by Larimer County until October 24, 1980. This was more than fifty-six (56) days after the defendant had entered upon his term of imprisonment. In addition, it is not disputed, and the trial court found, that
"The file of the Defendant at the Bureau of Prisons (held now at the Englewood facility) does not disclose that the Defendant was ever advised of his right to request a final disposition of the Colorado information as required by § 24-60-501, article III(c)."
The provisions of Article III(c) are mandatory. Hughes v. District Court, supra. The fifty-six (56) day delay in informing the defendant of the detainer lodged against him was not in compliance with the statutory mandate that he be promptly informed of the source and content of the detainer. In addition, he was never informed of his right to make a request for the final disposition of the indictment, information, or complaint. Compliance with the Agreement is a prerequisite to jurisdiction. People v. Jacobs, 198 Colo. 75, 596 P.2d 1187 (1979). Furthermore, there is no requirement in the Agreement that the prisoner demonstrate that he was prejudiced by the failure of corrections officials to comply with the provisions of the act. Hughes v. District Court, supra.
The Agreement does not provide an express sanction for failure to comply with the provisions of Article III(c). However, we agree with the Colorado Court of Appeals' holding in People v. Lincoln, 42 Colo. App. 512, 601 P.2d 641 (1979), that the proper sanction for failure to comply with the mandatory provisions of the Agreement is dismissal of the claims with prejudice.
"The duty to inform the prisoner under Article III(c) is a necessary concomitant to the effective operation of the Agreement. People v. Daily, 46 III.App.3d 195 [4 Ill.Dec. 756], 360 N.E.2d 1131 (1977). The purpose of the Agreement requires that the adverse consequences of official oversights be visited upon the prosecution, not upon the prisoner. Only in this way can the goals of the Agreement be achieved by requiring the officials concerned to learn of their duties under the Agreement and to perform them conscientiously. People v. Esposito, supra." [37 Misc.2d 386, 201 N.Y.S.2d 83, 90 (Queens County Ct. 1960)]
"The receiving state, having set the provisions of the Agreement in motion, must bear the burden of assuring that its provisions are enforced in the sending state. If the serious consequence of dismissal results automatically from the failure of the correctional officials in the imprisoning state to comply, `pressure [will] soon be brought to bear on the negligent officials from their administrative superiors as a result of protests from the other state.' Note, Convict's Right to a Speedy Trial, 18 Rutgers L.Rev. 828, at 862 (1964)." People v. Lincoln, supra.

There is no presumption that officials of an imprisoning state have performed their duties under the Agreement with regularity. People v. Lincoln, supra. See also People v. Gonzales, 42 Colo.App. 517, 601 P.2d 644 (1979) and McBride v. United States, 393 A.2d 123 (D.C.App.1978). We hold that when officials of the state imprisoning the defendant do not comply with the mandates of Article III(c), the indictments, informations, or charges against the defendant pending in the jurisdiction from which the detainer emanates shall be dismissed with prejudice.
It follows that the defendant's motion to dismiss with prejudice should have been granted.
The rule to show cause is made absolute.
ROVIRA, DUBOFSKY and LOHR, JJ., dissent.
*482 ROVIRA, Justice, dissenting:
I agree with the majority opinion except as to Part IV and therefore would discharge the rule.
According to the majority opinion, the defendant's motion to dismiss the charges against him is being granted because he was not promptly informed of what he already knew. The facts, which are not in dispute, reflect that on June 2, 1980, four days after the Larimer County detainer was filed against him, the defendant sent a request to the federal prison officials requesting a speedy disposition of the detainer.
The majority opinion holds that since the federal prison officials delayed for 56 days in informing him of the Larimer County detainer and since he was not informed of his right to request a disposition of the information, the multiple charges of theft against him must be dismissed. I disagree.
One of the purposes of the Interstate Agreement on Detainers (Agreement) is to make sure that the individual held in custody is aware of his right to have pending charges against him tried within a prescribed period of time. The record here reflects that the defendant knew of his right and exercised that right, and that trial was set in Larimer County within the prescribed period of time. The defendant had obtained all the benefits of the Agreement and was in no way prejudiced by the delay in advising him.
The majority opinion elevates form over substance. It, in effect, holds that because the federal prison officials did not tell defendant what he already knew, and they knew he knew it (defendant's June 2, 1980, request for speedy disposition), the theft charges must be dismissed. I do not agree that the Agreement requires such a construction and would discharge the rule.
I am authorized to say that DUBOFSKY and LOHR, JJ., join me in this dissent.
NOTES
[1] All citations which hereinafter refer to an "Article" refer to the Articles contained in the Interstate Agreement on Detainers, section 24-60-501, et seq., C.R.S.1973.
[2] If this initial period is considered a "term of imprisonment" for purposes of the Interstate Agreement on Detainers, the jurisdiction having custody of a defendant will most likely be required to terminate diagnostic study in order to comply with the rigid time requirements of the statute and thus defeat the purposes of 18 U.S.C. § 4205(c). Moreover, once the prisoner is transferred to the state filing the detainer, he must be retained in that jurisdiction until trial is completed or the charges are otherwise brought to disposition, for if he is returned to the original state without trial, the state filing the detainer will forfeit its right to prosecute the charges. Hughes v. District Court, 197 Colo. 396, 593 P.2d 702 (1979).
[3] While the detainer was actually filed on May 29, 1980, it did not become effective to invoke the provisions of the Agreement until the defendant had entered upon a term of imprisonment on August 29, 1980. See McQueary v. State, 21 Wash.App. 658, 585 P.2d 1197 (1978). Thus, his request for speedy disposition filed on June 2, 1980, was of no effect until August 29, 1980. United States v. Hutchins, supra.