**Sherman DOBSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 80–638, 80–1317.**

District of Columbia Court of Appeals.

Argued April 6, 1982.

Decided Aug. 23, 1982.

Arthur B. Leavens, Public Defender Service, with whom William J. Mertens, Public Defender Service, Washington, D. C., was on the briefs, for appellant. Silas J. Wasserstrom and Randy I. Bellows, Public Defender Service, Washington, D. C., also entered appearances for appellant.

Margaret Poles Spencer, Asst. U. S. Atty., with whom Stanley S. Harris, U. S. Atty., John A. Terry, William J. Birney, John R. Fisher, and Barry M. Tapp, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, MACK and PRYOR, Associate Judges.

1. The trial court failed to set a minimum period of incarceration as required by D.C. Code 1973, § 24–203(a).

PRYOR, Associate Judge:

Convicted in separate jury trials of two armed robbery counts, D.C. Code 1973, §§ 22–2901, –3202 (Appeal No. 80–638), and armed robbery, *id.,* and carrying a pistol without a license, *id.,* § 22–3204 (Appeal No. 80–1317) respectively, appellant urges in this consolidated appeal that his convictions be reversed because of a violation of his rights under Articles IV(a) and IV(c) of the Interstate Agreement on Detainers (Agreement), D.C. Code 1973, § 24–701; 18 U.S.C. App. at 1395 (1976). Finding no violations, we affirm appellant's convictions in all respects and remand for correction of sentence in Appeal No. 80–1317.[1]

I

On January 10, 1979, appellant was indicted and charged with five counts of armed robbery and four counts of carrying a pistol without a license. Prior to the filing of the indictment, a detainer was lodged against appellant while he was incarcerated in the Baltimore City Jail awaiting trial on unrelated charges. Arraignment in the District was scheduled for January 23, 1979; on that date, however, appellant failed to appear and a writ of habeas corpus ad prosequendum was issued to procure his appearance on February 20. On that date and on three other occasions[2] writs were issued to the Maryland authorities, but appellant was not transferred because of the charges pending in Baltimore. Upon his conviction in Maryland, appellant was sentenced on April 17, 1979 to a prison term of 48 years and transferred to the Maryland State Penitentiary, to begin serving his sentence. The District of Columbia detainer that had earlier been lodged against appellant was transferred to the penitentiary. On April 19, 1979, another writ was issued directing the warden to transport appellant to the District for the purpose of arraignment on May 8. Pursuant to the last writ,

2. The government caused subsequent writs to be issued on February 2, February 26, March 16, April 2, and April 19, but only the last resulted in appellant's transfer.

appellant was transferred to the District of Columbia.

Following arraignment, a July 24 trial date was scheduled for all nine counts. Thereafter appellant filed several pretrial motions[3] including a motion to sever offenses which ultimately resulted in counts one and two, three through six, and seven through nine, being tried in three separate trials.[4] The trial of the first two counts commenced on August 10, 1979, and concluded on August 14, 1979, with the jury returning a verdict of guilty as to both charges.[5] Trial on counts seven and eight was set for September 10, but because of several continuances and other pretrial delays, appellant was not brought to trial on these charges until April 4, 1980. Ten days later, appellant was found guilty as charged. On October 15, 1980, appellant was convicted of armed robbery and carrying a pistol without a license, the fifth and sixth counts of the severed indictment. In this consolidated appeal we consider appellant's claims only as they relate to his convictions in the second and third trials (Appeal Nos. 80–638 and 80–1317, respectively), as his appeal from his conviction of the first two counts is presently pending before this court.[6]

Appellant claims that the convictions arising from the last two trials were obtained in violation of his rights under the Agreement. Specifically, appellant contends that Article IV(a) of the Agreement, which allows the governor of a state a 30-day period in which to disapprove a request for temporary custody of a prisoner confined in that state, was violated when appellant was transferred to the District only 18 days after the April 19, 1979 writ was issued to secure temporary custody of him. Secondly, appellant argues that Article IV(c), the speedy trial provision of the Agreement requiring the prosecuting authority that has lodged a detainer against a prisoner, and secured his presence by a written request, to try him within 120 days of his arrival, was violated because he was not tried on *all* charges within that limitation period.[7] The government, on the other hand, argues that the Agreement does not apply because appellant was not incarcerated at the time the detainer was originally lodged.

We hold that the Agreement is applicable to the present circumstances but does not impose a minimum 30-day period during which the requesting jurisdiction cannot effect appellant's transfer. Moreover, we conclude that the Agreement's 120-day pro-

---

3. Appellant filed the following motions: (1) a motion to suppress identification testimony; (2) a motion to suppress evidence; (3) a motion to seat 12 prospective jurors prior to exercise of peremptory challenges; (4) a motion to dismiss the indictment and for stay of the proceedings on the grounds that the system for the selection of grand and petit jurors improperly excused persons engaged in certain occupations and thus denied him his constitutional right to juries selected from a fair cross section of the community; and (5) a motion to dismiss for failure to comply with Article IV(a) of the Interstate Agreement on Detainers, D.C.Code 1973, § 24–701.

    Rather than hear evidence on appellant's jury selection motion, the court and all parties agreed that an expected decision on an identical motion filed in an unrelated case would be dispositive in Dobson's case. On November 29, 1979, relief was denied, thereby denying Dobson's motion as well.

    In this appeal, appellant raises the same contention but we need not address the grand and petit jury issue as the identical issue has already been decided by this court. *See Sweet v.*

*United States,* D.C.App., 449 A.2d 315 (No. 80–463, Aug. 3, 1982).

4. Counts three, four, five and nine were dismissed by the government.

5. Appellant was sentenced on these charges on December 3, 1979.

6. *Dobson v. United States,* No. 79–1279.

7. Appellant also asserts that his impeachment with prior felony convictions should have been limited to the fact, exclusive of the nature of such adjudications. We find this argument to be without merit for it was expressly rejected in *Hill v. United States,* D.C.App., 434 A.2d 422, 429 (1981).

    Furthermore, appellant argues for the first time on appeal that the prosecutor's rebuttal argument concerning the opening statement of appellant's counsel amounts to reversible error. We disagree, however, holding that in the circumstances of this case his remarks did not constitute plain error.

vision is not violated where only one of the trials resulting from appellant's severed indictment commenced within said period since his second and third trials were held within a reasonable time thereafter.

## II

■ We first address the government's contention that the Agreement does not apply because appellant had not been sentenced in Maryland when the detainer was originally lodged against him. The Agreement is an interstate compact which was adopted to remedy the problems and abuses of the detainer system and to minimize disruptions of prison rehabilitation programs by providing a method by which prosecutors and prisoners alike could expeditiously dispose of the outstanding criminal charges underlying detainers. See Christian v. United States, D.C.App., 394 A.2d 1, 34 (1978), cert. denied sub nom. Clark v. United States, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). Pursuant to Article III of the Agreement, a prisoner may file a written request for trial disposition of charges contained in a detainer lodged against him by another jurisdiction which is a party to the Agreement; he must then be tried within 180 days of this request. Correspondingly, Article IV permits a prosecutor to obtain a prisoner incarcerated in another state by submitting a written request for temporary custody. In such a case, as here, the defendant must be tried within 120 days after his arrival in the requesting state. Violation of the statutory limitation period in either instance requires dismissal of the indictment.

■ .The word "detainer" is not defined in the Agreement but is explained in the Congressional legislation supporting it: "a detainer is a notification filed with the institution in which a prisoner is serving a sentence advising that he is wanted to face pending criminal charges in another jurisdiction." H.R.Rep.No. 1018, 91st Cong., 2d Sess. 2; S.Rep.No. 1356, 91st Cong., 2d Sess. 2, reprinted in [1970] U.S. Code Cong. & Ad.News 4864, 4865–66. Recently in Bean v. United States, D.C.

App., 409 A.2d 1064 (1979), this court held that the Agreement had no applicability "until an individual is tried, convicted, and sentenced in another jurisdiction," id. at 1065, and therefore a detainer (in the form of a warrant) which did not survive to the point of appellant's incarceration was outside the purview of the Agreement. Similarly, in United States v. Palmer, D.C.App., 393 A.2d 143 (1978), we held that a writ of habeas corpus ad prosequendum—standing alone—was not a detainer, and hence the government's conduct relevant thereto was not governed by the terms of the Agreement. In both Bean and Palmer we were guided by the Supreme Court's decision in United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). There, the Court held that where the federal government lodges a detainer against a prisoner in another jurisdiction and later procures him by a writ of habeas corpus ad prosequendum, the Agreement is operative because the writ is a "written request for temporary custody" within the meaning of the Agreement. Both Mauro and Bean indicate that the filing of a detainer and the submission of a written request for custody are necessary prerequisites to invocation of the Agreement. Moreover, in Bean we noted the significance of the detainer's inactive status at the time the appellant was incarcerated. Here, by contrast, the detainer remained active and followed appellant Dobson to the Maryland State Penitentiary. Thus, when the government caused the habeas corpus ad prosequendum writ to be issued to the warden of that institution in April 1979, appellant's rights under the agreement became operative because he had been tried, convicted, and sentenced in Maryland and the writ was a "request for temporary custody." Mauro, supra. Compare Romans v. District Court for Eighth Judicial District, 633 P.2d 477 (Colo.1981) (en banc). (Detainer did not become effective to invoke provisions of the Agreement until defendant had entered upon terms of imprisonment, thus his request for speedy trial was of no effect until such time), McQueary v. State, 21 Wash.App. 658, 585 P.2d 1197 (1978) (operative rights of prison-

er do not arise under Detainer Act until and after prisoner has begun his term of sentence in the holding jurisdiction).

■ Having decided that the Agreement is applicable here, we next consider appellant's assertion that the provisions of Article IV were violated when he was brought to the ·District less than 30 days from the issuance of the writ which effected his transfer. That provision states in pertinent part:

The appropriate officer of the jurisdiction in which an untried indictment, . . . is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: . . . Provided . . . that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

Appellant urges that the language imposes a minimum limitation period of 30 days during which time the incarcerating jurisdiction may not surrender custody of him. Recently, the United States Court of Appeals for the Fourth Circuit heard and rejected the same argument. *United States v. Bryant,* 612 F.2d 799 (4th Cir. 1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1855, 64 L.Ed.2d 274 (1980). There, the court stated:

We interpret the thirty-day period to be a maximum period for a state's action on a request following a detainer and not a minimum period during which a state cannot yield custody. The actual language of the Act, that "there shall be a period of thirty days . . . before the request be honored, within which period the Governor of the sending State may disapprove the request," *id.* art. IV(a), means

that *no more than* thirty days are allowed during which a *disapproval* will be countenanced rather than that at *least* thirty days must elapse before the sending state may approve and make the transfer. The stated purpose of the Act, "to encourage the expeditious and orderly disposition of [outstanding] charges . . .," *id.* art. I, is served by a construction that accelerates the possible trial date. *See also United States v. Mauro,* 436 U.S. at 351, 98 S.Ct. 1834. The remainder of Article IV also demands this construction, because it explicitly provides that "such delivery [of a prisoner] may not be opposed or denied on the ground that the executive authority of the sending State has not affirmatively consented to or denied such delivery". *Id.* art. IV(d).

We agree with the reasoning in *Bryant* and therefore hold that appellant's transfer to the District 18 days after the last writ was issued did not violate Article IV(a) of the Agreement.

### III

Appellant's trial contention raises an issue of first impression: whether multiple trials resulting from a defendant's motion to sever offenses contained within a single indictment (underlying his transfer to the District pursuant to the Agreement) must commence within 120 days of his arrival for prosecution.

■ The Agreement is silent on this issue. We therefore look to the purposes of the Agreement which are: (1) to minimize interference with a prisoner's treatment and rehabilitation that result from outstanding detainers based upon untried indictments lodged against him during the course of his imprisonment; and (2) to encourage the orderly and expeditious disposition of the criminal charges upon which these detainers are based. We conclude that the policies of the Agreement would not be furthered by reading the speedy trial provision as requiring the prosecuting jurisdiction, which obtained custody for purposes of trying appellant on a single indictment, to conduct *all* trials resulting from a defendant's motion for severance within the

120-day period. This would be inconsistent with the overall tenor of the Agreement which places greater value on minimizing the interruption of rehabilitation programs and achieving a final resolution of charges, than it does on the duration of any given interruption while proceedings are taking place; *Walker v. King*, 448 F.Supp. 580, 588 (E.D.N.Y.1978). This reasoning is supported by the Agreement's speedy trial provision which permits continuances for good cause shown and tolling periods when the prisoner is unable to stand trial. Therefore, we hold that appellant's rights under the Agreement were not violated *solely* by the government's failure to conduct his second and third trial within 120 days of his transfer.

■ Nor do we feel that a defendant's motion for severance, which results in multiple trials, necessarily excuses the prosecuting jurisdiction from the obligation imposed on it by the Agreement. That is, the government must commence at least one trial within the statutory period and all other trials must begin within a reasonable time thereafter.[8] Upon review of the record, we hold that appellant's second and third trials commenced within a reasonable time of the completion of the first trial, given the nature of the continuances granted for both sides thereafter and taking into account the amount of time necessary to conclude the second trial. We therefore affirm convictions in all respects and remand only for imposition of minimum sentencing on the carrying a pistol without a license charge in Appeal No. 80–1317.

*So ordered.*

---

**8.** This view was adopted by the court in *Stroble v. Egeler*, 408 F.Supp. 630 (E.D.Mich.1976), *rev'd on other grounds*, 547 F.2d 339 (6th Cir. 1977), where the prisoner was transferred to the receiving jurisdiction to stand trial in two sets of criminal charges arising from *separate detainers and indictments*, but was brought to trial while there on only one of the charges, within the statutory time limit. The district court held that the petitioner therein was "unavailable" for trial on the second charge and the time was thus tolled since he was preparing for the first trial. *Id.* at 635 n. 4. The reviewing court stated that the remaining charge must be tried within a reasonable period after the completion of the first trial. We adopt that approach in this instance.