David JENKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 82–1126.

District of Columbia Court of Appeals.

Argued Sept. 21, 1983.

Decided Oct. 24, 1984.

---

Lawrence M. Baskir, Washington, D.C., appointed by this court, for appellant.

Mary Incontro, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, and Michael W. Farrell, John R. Fisher and William D. Nussbaum, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and MACK and BELSON, Associate Judges.

PER CURIAM:

A jury found appellant, David Jenkins, guilty on two counts of first-degree burglary (D.C.Code § 22–1801(a) (1981)) and one count each of robbery (*id.* § 22–2901); rape (*id.* § 22–2801), and assault with intent to commit sodomy (*id.* §§ 22–3502, –3503). The court sentenced him to a prison term of thirty-two to ninety-six years.[1] Jenkins appealed, assigning as error a violation of his rights secured by the Interstate Agreement on Detainers Act (IAD). D.C.Code §§ 24–701 thru 705 (1981); 18 U.S.C.App. pp. 545–48 (1982). We affirm.

At the outset, we note that the government does not contest the applicability of the IAD to the facts of this case. Accepting the government's concession, the relevant facts are these: On July 1, 1981, an official of the Metropolitan Police Department lodged a detainer[2] against David Jenkins, who was then incarcerated in the State of Maryland.[3] A grand jury sitting in the District of Columbia indicted Jenkins on May 12, 1982 and charged him with two counts of first-degree burglary and one count each of robbery, rape and assault with intent to commit sodomy. The Superior Court issued a writ of *habeas corpus ad prosequendum* on February 16, 1982, which ordered the Maryland authorities to make Jenkins available to the court on

---

1. Appellant was sentenced to imprisonment for ten to thirty years on each count of first-degree burglary, those sentences to run concurrently. As to the remaining counts, each of which was to run consecutively to the burglary counts and to each other, appellant received five to fifteen years for robbery, twelve to thirty-six years for rape, and five to fifteen years for assault with intent to commit sodomy.

2. " '[A] detainer is a notification filed with the institution in which a prisoner is serving a sentence advising that he is wanted to face pending criminal charges in another jurisdiction.' " *Dobson v. United States,* 449 A.2d 1082, 1085 (D.C.1982) (quoting H.R.Rep. No. 1018, 91st Cong., 2d Sess. 2, S.Rep. No. 1356, 91st Cong., 2d Sess. 2, *reprinted in* [1970] U.S.Code Cong. & Ad.News 4864, 4865–66), *cert. denied,* —— U.S. ——, 104 S.Ct. 109, 78 L.Ed.2d 111 (1983).

3. It is undisputed between the parties that appellant was a sentenced prisoner at the time of his transfer to the District of Columbia.

March 4, 1982. Pursuant to the writ that had issued on February 16, 1982, Jenkins was transferred on March 1, 1982, from state custody to the District of Columbia. On March 4, 1982, appellant appeared, by a grand jury directive, in a lineup. At that lineup, the complainant identified appellant as her assailant. Following his arraignment on March 8, 1982, Jenkins filed a motion to suppress the lineup identification. In his motion, appellant argued he was denied an opportunity to consult with counsel regarding his transfer and that he was "deprived of his right to appear in court . . . ." He renewed these arguments in a hearing on the motion before the trial court. The trial court denied appellant's motion, finding no basis for suppression of the lineup identification. After denial of his motion to suppress, he was tried to a jury on June 21 and 22, 1982, convicted, and this appeal followed.

■ On appeal, appellant contends that his transfer from Maryland to the District of Columbia violated basic rights provided him by the IAD. Consequently, he argues, the indictment on which his convictions are based must be dismissed. The government argues that, assuming *arguendo* that the provisions of the IAD were violated, appellant waived any right to dismissal of the indictment by failing to raise the issue by motion in the trial court. We find the government's argument persuasive and, accordingly, hold that appellant failed to preserve for appeal his claimed violations of the IAD.

■ It is established that "absent 'good cause shown,' a failure to present a claim under the Agreement at the trial level constitutes a waiver of those rights under Super.Ct.Cr.R. 12(d)." *Christian v. United States*, 394 A.2d 1, 37 (D.C.1978) (per curiam), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). The waiver need not be a waiver-in-fact (*i.e.* "there need not be an 'intentional relinquishment' of a 'known' right for there to be a waiver under the Agreement" *id.* at 39),[4] because the rights afforded under the statute "are of a class which are inferentially waived if not raised prior to or during trial (Super.Ct.Cr.R. 12)."[5] *Id.* at 35. *See generally* 8 MOORE'S FEDERAL PRACTICE AND PROCEDURE ¶ 12.03 (2d ed. 1984 rev.); 1 WRIGHT FEDERAL PRACTICE AND PROCEDURE § 193 (2d ed. 1982). Moreover, "[a] claim the Agreement has been violated should be raised at the earliest possible time before the witnesses and the parties have gone to the burden and expense of a trial." *Christian, supra*, 394 A.2d at 39.

■ In the present case, appellant clearly did not move for dismissal of the charges before trial or during the trial itself. We find unpersuasive appellant's contention that his IAD claims were preserved for appeal in the context of the trial court's denial of his pretrial motion to suppress the lineup identification. Although appellant's memorandum supporting his motion to suppress cited two IAD cases and mentioned his right to contest his

---

**4.** The *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) "knowing and intelligent" waiver standard is applicable "only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." *Schneckloth v. Bustamonte*, 412 U.S. 218, 237, 93 S.Ct. 2041, 2053, 36 L.Ed.2d 854 (1973). The rights conferred under the IAD are a "matter of legislative grace; they can be rescinded as readily as they were granted." *Christian, supra*, 394 A.2d at 37.

**5.** Super.Ct.Crim.R. 12 provides in pertinent part:
(b) . . . Any defense, objection, or request *which is capable of determination without the trial of the general issue* may be raised before

trial by motion . . . . The following must be raised prior to trial:
(1) Defenses and objections based on defects in the institution of the prosecution; or
(2) Defenses and objections based on defects in the indictment or information (other than it fails to show jurisdiction in the court or to charge an offense . . .);

&ast; &ast; &ast; &ast; &ast; &ast;

(d) . . . Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver. [Emphasis added.]

transfer under the Agreement, we are of the belief that appellant's vague references to the IAD were insufficient to place the trial court on notice that he was invoking his right to dismissal of the indictment. Nor can we perceive how appellant's argument at the hearing on the motion could be viewed as anything other than an argument for suppression of a lineup identification.[6] We conclude that appellant's pretrial motion to suppress the lineup identification cannot now, after all judicial resources have been employed, be transformed into a motion for dismissal of the indictment. To consider Jenkins' claim at this late stage "would tend to encourage piecemeal litigation of claims of error in the appellate courts and undercut the policy of achieving prompt and final judgments." *United States v. Scallion*, 548 F.2d 1168, 1174 (5th Cir.1977), *cert. denied*, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978).

We also find that "good cause" has not been demonstrated which would alleviate the effect of Jenkins' waiver. Appellate counsel contends that if appellant is deemed to have waived his rights under the IAD, then appellant was denied effective assistance of counsel at the trial level. Specifically, he argues that because trial counsel was required to prepare pretrial motions, complete investigation and discovery, and prepare for trial under "hurried circumstances," "good cause" must exist to excuse the waiver. We disagree.

Given the speedy trial provisions of the IAD, every trial counsel is pressed for time in preparing the case of a transferred prisoner. Our review of the record in this case, therefore, reveals none of the exceptions to the general practice of declining to notice alleged errors raised for the first time on appeal. Contrary to appellant's claim on appeal, there is no "miscarriage of justice [ ]" *Adams v. United States*, 302 A.2d 232, 234 (D.C.1973) in our refusal to recognize his dilatory claim. The error asserted does not "in any way affect the truth-seeking process," *Christian, supra,* 394 A.2d at 38, or "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). Appellant was lawfully sentenced after a fair trial which provided him every opportunity to contest the charges against him. We hold that under Super.Ct.Crim.R. 12(d) he has waived any objection to alleged violations of the IAD.

*Affirmed.*

---

6. At the hearing on the motion to suppress, appellant's counsel stated:

> Mr. Jenkins was brought into the District of Columbia on an interstate agreement, on detainer there. I believe he was not consulted about that. He was brought in on June— March the 6th—March the 1st.
>
> On March the 4th, he was brought to the lineup. He was brought into the lineup room after having been made to sit in a public anteroom for two hours where its conceivable that the complaining witness could have seen him. We don't know whether she was there on that day.
>
> Then he was brought in—served with a subpoena and he was brought to the lineup. According to Mr. Nussbaum, he was at the lineup according to the usual custom. A lawyer was appointed by the police to stand in. That

lawyer had an opportunity to view the people standing there and to listen while the witnesses were called in order to monitor the lineup for physical suggestivity.

> And then, finally, on June 8th—on March 8th, Mr. Jenkins was finally brought to the court for a presentment where he was appointed counsel, myself. He never had an opportunity to speak or consult with counsel from his being brought into the District until March 8th, including counsel to advise him about his rights at the lineup or at—rather, at the Grand Jury that served him at the lineup.
>
> It is our contention that this is an impermissible denial of counsel and that, being the case, anything that happened during that time, such as the lineup identification, should be suppressed. [Tr. 25–26]