*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 14-CV-1194

JOHN C. FLOOD OF MD, INC., APPELLANT,

v.

JERRY BRIGHTHAUPT, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CAB-9997-11)

(Hon. Robert D. Okun, Trial Judge)

(Argued May 19, 2015                     Decided August 13, 2015)

*Albert Wilson, Jr.*, with whom *Lily A. Graves* was on the brief, for appellant.

*Natalie S. Walker* for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and BELSON, *Senior Judge*.

BELSON, *Senior Judge*:  John C. Flood of MD, Inc. (Flood of MD), appellant, appeals the denial of its emergency motion to quash a writ of attachment and the denial of its Rule 59 (e) motion to reconsider the denial of its above-mentioned motion.  Jerry Brighthaupt, appellee, obtained and served a writ of

attachment against Flood of MD in an attempt to satisfy a judgment rendered in his favor against John C. Flood of D.C., Inc. (Flood of DC).  Brighthaupt had reason to believe that Flood of DC fraudulently conveyed its assets to Flood of MD to avoid the judgment.  Flood of MD argues on appeal that, *inter alia*, the writ of attachment was ineffective against it because Flood of DC, rather than Flood of MD, was the named defendant against which judgment was rendered and that the District of Columbia writ of attachment laws, D.C. Code § 16-501 (2012 Repl.), as applied, violated appellant's right to due process under the Fifth Amendment of the U.S. Constitution.  We affirm.

## I.

Brighthaupt had worked some years ago for Flood of DC.  In 2011, he filed a complaint against Flood of DC alleging that it violated the D.C. Wage Payment and Collection Act (WPCA), D.C. Code § 32-1301 (2012 Repl.).  Two years later, on October 22, 2013, the trial court entered a $12,366.08, plus costs and interest, judgment in his favor against Flood of DC.  On February 20, 2014, the trial court entered an amended judgment of $13,602.28 (costs included), plus interest, and $29,673.00 in fees.

At oral argument, Brighthaupt explained that he learned of Flood of DC's fraudulent conveyance through a post-judgment discovery hearing that occurred after entry of judgment against Flood of DC, but before he obtained the writ of attachment against Flood of MD.[1]  On April 8, 2014, Brighthaupt served a writ of attachment in the District of Columbia, signed by a deputy clerk of the court, on SunTrust Bank, Inc. (SunTrust), for two bank accounts, one each for Flood of DC and Flood of MD, to satisfy the WPCA judgment.  The writ of attachment listed only Flood of DC as a judgment debtor.  Brighthaupt did not attach an affidavit and did not post a bond.  SunTrust responded that it was holding $13,602.28 from the Flood of MD account and increased that amount upon notification of the award of attorney's fees that was an additional basis for attachment.

On May 2, 2014, Brighthaupt filed a motion for judgment of recovery and to set aside fraudulent conveyances made to Flood of MD with the following factual allegations:

> 5. Post-judgment discovery obtained by Plaintiff demonstrates that shortly before the Court's entry of the Judgment against Defendants, Defendant Melville Davis, along with his two daughters Sherianne Mccoy ([née]

---

[1]  Brighthaupt did not include in the record on appeal a transcript or other record created at the post-judgment discovery hearing.

Davis), President of [Flood of MD], and Joanne Smiley, President of [Flood of DC], incorporated a new entity, [Flood of MD], and transferred all of [Flood of DC's] assets to the new company. Notably, all of the accounts receivable, such as credit card payments, which were previously deposited into the Suntrust account of [Flood of DC], were redirected to the Suntrust account of [Flood of MD]. As of June 2013, Defendants stopped making any further deposits into the Suntrust account for [Flood of DC].

6. Defendant Melville R. Davis is controlling both companies, through his daughters Sherianne Mccoy ([née] Davis) and Joanne Smiley, and has directed the above fraudulent actions be undertaken to evade payment of Plaintiff's judgment.

7. The transfer of cash and business assets from [Flood of DC] to [Flood of MD] constitutes an unlawful fraudulent conveyance in violation of D.C. Code §§ 28-3101 *et seq.*

Brighthaupt attached several exhibits to his motion which established that, *inter alia*, Flood of MD was incorporated on May 7, 2013, during the pendency of Brighthaupt's action, and, within two months of Flood of MD's incorporation, Flood of DC no longer received customer checks and credit card payments. Prior to the abrupt end of deposits, Flood of DC regularly moved over $100,000 in deposits per month through its account, and immediately after the abrupt end of those deposits, Flood of MD moved over $100,000 in deposits per month through its account.

On May 8, 2014, Flood of MD filed an emergency motion to quash the writ

of attachment that Brighthaupt served on its SunTrust bank account on the ground that "a judgment creditor may *not* attach the assets or proceeds of a nonparty, non-judgment debtor without an order from the Court." The motion also stated, "Even if we assume that plaintiff is correct [that Flood of DC fraudulently transferred assets to Flood of MD], D.C. law still does *not* allow plaintiff to attach the funds in [Flood of MD's] bank account without a court order." The trial court denied the emergency motion to quash the writ of attachment and, citing D.C. Code § 16-529 (a) (2012 Repl.),[2] concluded that a "[p]laintiff is permitted by D.C. law to attach property in the hands of another party when he believes that the property was fraudulently conveyed."

After considering Flood of MD's subsequent Rule 59 (e) motion to alter or amend judgment—arguing that the trial court improperly relied on D.C. Code § 16-529 and that Brighthaupt should have filed an affidavit and posted a bond before the clerk's office issued the writ of attachment—the trial court entered an omnibus order on October 1, 2014, denying the motion to alter judgment. The trial

---

[2] "(a) Where the ground upon which an attachment is applied for is that the defendant has assigned, conveyed, or disposed of his property with intent to hinder, delay, or defraud his creditors, the attachment may be levied upon the property alleged to be so assigned or conveyed in the hands of the alleged fraudulent assignee or transferee, as a garnishee." D.C. Code § 16-529.

court changed its analysis, shifting its reliance from § 16-529 to D.C. Code § 16-547 (2012 Repl.), set forth on page *10 *infra*, to deny the motion to alter judgment. It reasoned that the writ of attachment could attach where assets are held by "the garnishee in the name of or for the account of a person other than the defendant," which would include Flood of MD's SunTrust account.

The trial court upheld the efficacy of the writ in its November 11, 2014 order, finding that Flood of DC "transferred its business and all of its assets to Flood [of] MD with an 'intent to hinder, delay or defraud any creditor of the debtor.'" This finding allowed Brighthaupt to execute the judgment for recovery against Flood of MD, although the original judgment was against Flood of DC. Flood of MD appeals both the July 21, 2014, (initial) and October 1, 2014, (omnibus) orders, but not the November 11, 2014, order.[3]

---

[3] Even though the trial court granted Brighthaupt's motion to execute its judgment against Flood of DC on Flood of MD, a ruling that Flood of MD does not appeal, this appeal is not moot because Flood of MD may be entitled to costs and reasonable fees from Brighthaupt if the writ of attachment was improperly issued. D.C. Code § 16-529 (a) ("[T]he attachment may be levied upon the property alleged to be so assigned or conveyed in the hands of the alleged fraudulent assignee or transferee, *as a garnishee*." (emphasis added)); D.C. Code § 16-551 (2012 Repl.) ("A garnishee or stranger to the action who may make claim to the property attached may file an answer defending against the attachment."); D.C. Code § 16-553 (2012 Repl.) ("[W]here judgment is rendered for the garnishee, the plaintiff shall be adjudged to pay to the garnishee, in addition to the taxed costs, a reasonable attorney's fee."); *see Corto v. Nat'l Scenery Studios, Inc.*, 705 A.2d

(continued…)

## II.

We first address Flood of MD's argument that the trial court improperly denied appellant's emergency motion to quash the writ of attachment because a) the writ attached the bank account of a non-party transferee without a court order b) the trial court improperly relied on D.C. Code § 16-547 when denying the motion to quash and c) the writ did not name Flood of MD on the writ itself. Given that Flood of MD did not properly present the third issue to the trial court,[4]

---

(…continued)
615, 621 n.10 (D.C. 1997) ("Although we agree that the property that was subject to the writ can no longer be affected by a ruling of this court, we cannot conclude that the issue is necessarily moot, . . . . It may be that the Kennedy Center's claim against Corto for expenses and fees it incurred in responding to the writ of attachment could be affected if the writ had been improperly issued.").

[4] Flood of MD seems to concede that the third argument was not raised before the trial court and therefore should not be addressed on appeal; however, Flood of MD counters its own concession and argues that this issue is purely one of law and was "passed upon" by the trial court, thus warranting consideration by this court. Flood of MD then goes on to list every tangentially-related instance where it raised defects with the writ of attachment. Flood of MD presents five examples where the trial court "passed upon" the issue. The first three examples are actually citations not to an argument, but rather to a "Material Facts" section of Flood of MD's Emergency Motion to Quash Writ of Attachment. The fifth example is equally unavailing because it cites to a passing reference in Flood of MD's Motion to Alter or Amend Judgment which was not sufficient to place the trial court on notice that it intended to challenge the writ for failing to name Flood of MD on the writ itself. *See Jenkins v. United States*, 483 A.2d 660, 662-63 (D.C. 1984) ("We find unpersuasive appellant's contention that his IAD claims were

(continued…)

we address only a combination of the first and second arguments: whether a post-judgment writ of attachment obtained pursuant to § 16-547 can reach the assets of a transferee when the creditor has a reason to believe that a fraudulent transfer occurred. We answer in the affirmative and accordingly affirm the trial court's orders.

The law of the District reflects a fundamental distinction in writs of attachment: those obtained before judgment and those obtained after judgment. The pre- and post-judgment writ of attachment distinction is important because it balances two competing economic interests—protection of innocent parties from unlawful attachment on the one hand and a creditor's easy access to a debtor's assets on the other. Writs obtained before judgment are issued in anticipation of litigation and those obtained after judgment are issued to enforce a judgment.

(…continued)
preserved for appeal . . . . Although appellant's memorandum supporting his motion to suppress cited two IAD cases and mentioned his right to contest his transfer under the Agreement, we are of the belief that appellant's vague references to the IAD were insufficient to place the trial court on notice . . . ."). The fourth example, a citation to the argument section of Flood of MD's motion to quash is sufficient to preserve only the first issue—Flood of MD's argument that "the writ of attachment must be quashed because plaintiff attached the assets of a nonparty, non-judgment debtor *without* a court order."

Given that Flood of MD failed to allege before the trial court that the writ of attachment was ineffective because it did not list Flood of MD on its face, we decline to consider it on appeal. The trial court did not "pass" on this issue.

Generally speaking, pre-judgment writs of attachment are available only in limited circumstances because of the significant risk of improper attachment. Moreover, a creditor must comply with additional procedural safeguards, such as filing an affidavit and posting a bond to protect the debtor against an unlawful writ, before executing the pre-judgment writ of attachment. Post-judgment writs of attachment are more freely available, without such procedural safeguards, because the risk of an unlawful attachment is much lower given that a factfinder has already found in favor of the creditor. The circumstances of this case raise the question of whether a writ of attachment that includes the bank account number of a nonparty, in the absence of a judicial finding of a fraudulent conveyance, should be treated as a pre-judgment writ of attachment obtained against a new party or may be treated as a post-judgment writ of attachment obtained against a transferee that is fraudulently holding assets for a debtor.

The chapter of the D.C. Code governing writs of attachment is divided into three subchapters: Subchapter I, "Attachment and Garnishment Generally"; Subchapter II, "Attachment and Garnishment After Judgment in Aid of Execution"; and Subchapter III, "Attachment and Garnishment of Wages, Etc." D.C. Code §§ 16-501-33 (Subchapter I); D.C. Code §§ 16-541-56 (Subchapter II); D.C. Code §§ 16-571-84 (Subchapter III). Subchapter I applies to all civil actions

for the recovery of specific personal property, a debt, or damages for the breach of contract. D.C. Code § 16-501 (a) (2012 Repl.). Subchapter II applies after a judgment is rendered. D.C. Code § 16-541 (2012 Repl.). Subchapter III applies to the garnishment of wages and related procedures, and thus is not applicable in the instant case. *See* D.C. Code § 16-571 (2012 Repl.). Given the scope of each subchapter, Subchapters I and II appear to overlap. We do not attempt a broad resolution of any potential overlap in coverage, but instead focus our analysis on § 16-547, the provision the trial court ultimately relied upon in denying the motion to quash the writ of attachment.

D.C. Code § 16-547 is located in Subchapter II, titled "Attachment and Garnishment After Judgment in Aid of Execution." It reads:

> Where the property or credits attached or sought to be attached are held by the garnishee in the name of or for the account of a person other than the defendant, the garnishee shall retain the property or credits during the period pending determination by the court of the propriety of the attachment or the rightful owner of the property or credits. During that period the garnishee shall incur no liability whatsoever for the retention.

D.C. Code § 16-547. There is another provision, D.C. Code § 16-511 (b) (2012 Repl.),[5] identical to § 16-547, that is located in Subchapter I (Attachment and Garnishment Generally). The enactment of these dual provisions suggests that § 16-511 (b) is designed to apply to pre-judgment writs of attachment and § 16-547 is designed to apply to post-judgment writs of attachment.

Given the language of § 16-547, it follows that a post-judgment creditor must be allowed to attach the assets of a non-party when it has reason to believe that a fraudulent conveyance occurred. As a general proposition, a court order establishing the ownership of property is not needed prior to executing a post-judgment writ of attachment against a debtor's property in possession of a third-party and thus is properly treated as still owned by the debtor. *Compare* D.C. Code § 16-501 (pre-judgment), *with* D.C. Code § 16-542 (2012 Repl.) (post-judgment). The execution of the writ of attachment would set in motion proceedings that would allow the third-party to contest the ownership of the property and allege that the writ of attachment was unlawfully issued. D.C. Code

---

[5] "(b) Where the property or credits attached or sought to be attached are held by the garnishee in the name of or for the account of a person other than the defendant, the garnishee shall retain the property or credits during the period pending determination by the court of the propriety of the attachment or the rightful owner of the property or credits. During that period, the garnishee shall incur no liability for the retention." D.C. Code § 16-511 (b).

§ 16-551 ("A garnishee or stranger to the action who may make claim to the property attached may file an answer defending against the attachment. The answer may be considered as raising an issue without any reply, and any issue of fact thereby made may be tried with a jury if any party so desires."); c*f. Hegna v. Islamic Republic Of Iran*, 376 F.3d 226, 234 (4th Cir. 2004) (applying Maryland law). We see no reason that assets fraudulently conveyed, and thus still owned by the debtor, to a transferee should be exempt from post-judgment writs of attachment on the ground that a court had not previously decided the ownership of the asset in question, given that ownership of the property could promptly be questioned in any case involving a third party.

Flood of MD's contrary argument that § 16-547 is designed to protect a garnishee when a creditor seeks to enforce a writ of attachment on a joint account—such as a bank account held by a debtor and a spouse—is not persuasive. Flood of MD is correct in that § 16-547 does provide protections to a garnishee, but this provision does not govern jointly-owned property. Instead of stating "jointly owned," the statute instead covers property held "in the name of or for the account of a person other than the defendant," which suggests only one owner. D.C. Code § 16-547. This reading of § 16-547 is bolstered by again looking to other provisions of the D.C. Code. A different provision, § 16-514, applies when

"the garnishee holds a credit or property for two or more persons, including the person whose credit or property is sought to be attached . . . ." This wording indicates that it applies to jointly-owned property. D.C. Code § 16-514 (2012 Repl.). There is no analogous provision under Subchapter II, so this provision apparently applies to both pre- and post-judgment writs of attachment. The language of the provision does not suggest otherwise.

At oral argument, Flood of MD presented for the first time another counterargument—Brighthaupt should have sought remedies under the D.C. Uniform Fraudulent Transfer Act, to set aside the conveyance, as opposed to executing a writ of attachment on the assets of a transferee. We do not consider this argument as it was raised for the first time at oral argument, but it is useful to an understanding of the statute governing writs of attachment to explain briefly the interplay between the D.C. Uniform Fraudulent Transfer Act and post-judgment writs of attachment.

The D.C. Uniform Fraudulent Transfer Act of 1995, D.C. Law 11-83, D.C. Code § 28-3101-11 (2012 Repl.), provides several remedies for judgment

creditors.[6]  As stated in subsection (a)(2), a creditor may utilize § 16-547 and execute a post-judgment writ of attachment on transferees to reach fraudulently conveyed assets.  The attachment and fraudulent conveyance statutes are designed to work in tandem to provide a strong remedy against debtors who seek to fraudulently convey assets, and should be applied accordingly.

Under the circumstances, we are satisfied that Brighthaupt followed a correct procedure by attempting to execute a post-judgment writ of attachment against Flood of MD on the ground that he believed Flood of DC had fraudulently conveyed its assets to Flood of MD.  While there may be some risk that permitting the use of this procedure may open the door to improper use by creditors of the generous post-judgment writ of attachment procedure to the detriment of non-

---

[6]  "(a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in section 28-3108, may obtain:

> (1)  Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
> (2)  An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure proscribed by sections 16-501 through 16-584;
> (3)  Subject to applicable principles of equity and in accordance with applicable rules of civil procedure. . . .

(b)  If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."  D.C. Code § 28-3107 (2012 Repl.).

parties, the likelihood of such misuse of the procedures to satisfy a judgment is minimized because it exposes overzealous creditors to potential penalties in the form of damages and attorney's fees for improper attachment. D.C. Code § 16-553. The requirement of obtaining a judgment against the original debtor, and the penalty provision for unlawfully attaching assets, should sufficiently deter a judgment creditor from attaching the assets of innocent third parties. Accordingly, we are satisfied that the trial court properly relied on § 16-547 to deny the motion to quash Brighthaupt's execution of a writ of attachment on Flood of MD's bank account.

## III.

Flood of MD next argues, again for the first time on appeal, that the District's writ of attachment laws, as applied to Flood of MD, violated Flood of MD's right to due process under the Fifth Amendment of the United States Constitution. Specifically, Flood of MD contends that its right to due process, as established in *Connecticut v. Doehr*, 501 U.S. 1 (1991), was violated because D.C. law "required (1) no advance notice to the property owner; (2) no opportunity to be heard before the attachment; (3) no posting of a bond; or (4) no judicial review

before the approval of a pre-judgment attachment."[7]  Even though Brighthaupt

does not argue that Flood of MD forfeited this argument by failing to raise it before

the trial court,[8] we rule *sua sponte* that Flood of MD did so.  Given the fact-

specific nature of an as-applied due process challenge, we see no reason to depart

from the well-established appellate principle that we do not decide issues on appeal

that were "neither raised nor decided" in the trial court.  *Miller v. Avirom*, 127 U.S.

App. D.C. 367, 369, 384 F.2d 319, 321 (1967).

---

[7]  *Doehr* applies only to pre-judgment writs of attachment.  Flood of MD makes no argument about how its due process rights were violated in light of *Griffin v. Griffin*, 327 U.S. 220, 233-34 (1946), which addressed post-judgment writs of attachment.

[8]  Brighthaupt's brief on appeal addressed the merits of an as-applied due process challenge to the November 2014 order, which Flood of MD did not raise in the trial court.  In addition, Brighthaupt does not argue that Flood of MD failed to raise the due process argument before the trial court.

Flood of MD did raise a facial due process challenge before the trial court, but a facial due process challenge is not sufficient to preserve an as-applied due process challenge on appeal.  *See Pickelman v. Mich. State Police*, 31 F. App'x 298, 303 (6th Cir. 2002) (unpub.) ("[W]e are ill-equipped to address [the as-applied and other] challenges because the record below is not developed in those areas and lacks crucial facts needed to determine these claims."); *DeRose v. United States*, 315 F.2d 482, 487 (9th Cir. 1963) ("One who asserts that a statute, particularly one that has been held valid in other cases, is invalid when applied to his case, has a duty to make a record that will properly present the point.").

\* \* \* \* \*

For the foregoing reasons, we affirm the trial court's denial of Flood of MD's emergency motion to quash the writ of attachment and subsequent motion to reconsider.

*So ordered.*